### RICH v. DAILY CREAMERY CO.

1. TRIAL—VERDICTS—GREAT WEIGHT OF EVIDENCE.
   The trial court and the Supreme Court are bound by jury's verdict unless it was against the clear weight of the evidence, or error in the trial and proceedings was committed by the trial court.

2. APPEAL AND ERROR—MOTION FOR NEW TRIAL—WEIGHT OF THE EVIDENCE.
   In the absence of a motion for new trial, made in case tried before a jury, both the trial and appellate court are precluded from passing upon the question as to whether the verdict of the jury was against the weight of the evidence.

3. DAMAGES—QUESTION FOR JURY.
   The question of damages in a tort action is fundamentally a question for a jury to pass upon.

4. APPEAL AND ERROR—REMAND—DAMAGES—QUESTION FOR JURY.
   Upon remand from Supreme Court of action for conspiracy for assessment of damages only, denial of defendants' motion for a decision by the court of their motions for a directed verdict, to dismiss and discharge jury and declare a mistrial and grant a new trial on all issues and to have the court submit to new jury the question of liability as well as all other questions involved was proper where subsequent trial was had upon question of damages only.

5. SAME—REMAND—DAMAGES—EVIDENCE—SPECIAL QUESTIONS.
   Upon remand from Supreme Court of action for conspiracy to deprive plaintiff of his business property and good will for assessment of damages only, where jury's answers to special questions put to it by trial court were supported by ample testimony, in some instances undisputed, denial of defendant's motion to amend verdict by disallowing certain items which had been allowed was proper.

6. DAMAGES—CONTRACTS—PROFITS.

In an action on a contract, where profits are in their nature contingent on opportunity, successful operation, and other uncertain happenings, they will generally be allowed only as an element of damages for consideration by jury with the other proof submitted where found to have been in contemplation of the parties.

7. LANDLORD AND TENANT—OUSTER—DAMAGES—PROFITS—EVIDENCE.

When the amount of profit lost by the wrongful act of a landlord can be shown with reasonable certainty, and is not so remote, speculative, or contingent as to form no reliable basis for a determination as to loss, evidence of profits gained in the conduct of a business and the probability of their continuance had not the business been interrupted by the ouster is admissible on question of damages sustained by interruption of the business.

8. CONSPIRACY—DAMAGES—LOSS OF PROFITS—ICE-CREAM BUSINESS.

In action for conspiracy to deprive plaintiff of his business property and good will in which defendants claimed that profits for following years could not be properly assessed as damages by jury, where ice-cream business was one involved, although it had been operating only a short time and was a seasonal one, where such factors were reflected by jury's verdict, allowance for profits lost because of interruption of business was proper since the business was an established, not an experimental, one.

9. APPEAL AND ERROR—JURY'S USE OF EXHIBITS.

Since the proper place for exhibits is in the court room until the termination of the trial, where not all of defendants' exhibits were in the court room when the case was submitted to the jury, court's direction that the jury be furnished with such as were there then was not an abuse of discretion.

10. SAME—JURY'S REQUEST FOR TESTIMONY.

Reading to jury only that portion of plaintiff's direct examination covering a particular subject which it requested during its deliberations did not constitute reversible error where no cross-examination appears to have been made on that subject, as jury is presumed to have had in mind the testimony of three other witnesses on the subject which defendant also sought to have read to jury although not requested by it.

11. Verdicts and Findings—Special Verdict—Discretion of Court.

It is within the discretion of a trial court whether or not the jury should be directed to return a special verdict (Court Rule No. 37, § 7 [1933]).

12. Trial—Instructions—Special Verdict—Reargument.

A trial court may not permit reargument of a case to jury after having required a special finding or verdict on his own motion (Court Rule No. 37, § 7 [1933]).

Appeal from Wayne; Brennan (Vincent M.), J. Submitted October 7, 1942. (Docket No. 24, Calendar No. 42,028.) Decided November 24, 1942. Rehearing denied December 22, 1942.

Case by Peter Rich against Daily Creamery Company, a corporation, and others for conspiracy to deprive plaintiff of his business property and good will. From reassessment of damages by jury and judgment thereon, defendant appeals. Affirmed.

*Max Kahn,* for plaintiff.

*Sempliner, Dewey, Stanton & Honigman,* for defendants Daily Creamery Company, Frank Ledwon, Anthony Cwiek, and American Surety Company.

*Louis Starfield Cohane* and *Regene Freund Cohane,* for defendants Daily Creamery Company, Frank Wisniewski, and American Surety Company.

Chandler, C. J. This is the second time this case has been before this court on appeal by defendants from verdicts rendered by juries and judgments entered thereon in favor of plaintiff, the former appeal being reported in 296 Mich. 270 (134 A. L. R. 232).

A recital of the factual issues involved would be a mere repetition of what we said in the first appeal, when we determined that plaintiff, under the plead-

ings and proofs, had clearly established a cause of action against defendants, warranting a recovery of damages for the tortious acts of said defendants, but that the trial court had erred in his charge to the jury in permitting them to go too far into the realm of speculation in arriving at the amount of damages sustained. This necessitated *"a reversal and the granting of a new trial for the assessment of damages only, under the rules of law applicable to the measurement of damages sustained by plaintiff for the wrongs complained of and established by him in this action."*

It will be noted that upon the first trial the jury returned a verdict in plaintiff's favor and against all of the defendants, except defendant Gornick, for the sum of $15,162.50, which on motion for a new trial was reduced by the court to $8,500 and judgment was entered for this sum. In the instant case, a verdict was rendered and judgment entered for the sum of $8,233.78.

The record in the former appeal, as well as in the instant one, discloses that on the issues of fact submitted to the jury, the testimony was highly conflicting, and the verdicts rendered in both instances clearly indicate that both juries, the triers of the facts, relied upon the testimony of plaintiff on the disputed issues of fact submitted to them for consideration. By such findings in the instant case, both the trial and this court are bound, unless the verdict was against the clear weight of the evidence, or error in the trial and proceedings was committed by the trial court.

After verdict and prior to entry of judgment, defendants filed simultaneously the following motions: (1) to amend the verdict; (2) for a decision by the court "of defendants' motions for a directed verdict; to dismiss and discharge the jury and declare

a mistrial and grant a new trial on all issues; to have the court submit to this jury the question of liability as well as all other questions involved;" and (3) for judgment *non obstante veredicto,* all of which motions were denied.

We find from the record before us that defendants, subsequent to verdict, filed no motion for a new trial, in which case both the trial and appellate court are precluded from passing upon the question as to whether the verdict of the jury was against the weight of the evidence. However, inasmuch as it might be claimed by defendants that the trial court treated the motion designated as (2), above, as a motion for a new trial, we will quote from his opinion in the denial of all of said motions and here announce our approval of his determination of the questions raised thereby.

The court said:

"This motion is denied. This case was before the Supreme Court in *Rich* v. *Daily Creamery Company,* 296 Mich. 270 (134 A. L. R. 232). In that case the Supreme Court said:

" 'The judgment is reversed and the case remanded for the assessment of plaintiff's damages under the rules of law applicable thereto.'

"The court held, in substance, that plaintiff had proven violation of contract and resultant liability upon the part of the defendants. As I read the decision, that issue, or those issues, were *res judicata.* The only question which I was permitted to submit to this jury was the question of the amount which should be awarded to the plaintiff. That was thoroughly discussed by court and counsel before the beginning of this second trial, and we agreed upon a procedure which apparently was agreeable to both sides, by which each lawyer, at the opening of the case, outlined his theory, and also admitted that the subject of liability was foreclosed by previous court

ruling that the only question was the amount of damages. The case was then tried upon that theory.

"Now the chief arguments raised by counsel for the defendants upon this motion, it seems to me, have to do with the credibility of witnesses, and also with the proposition that if we had known as much at the first trial as we know now, the jury in the first case might not have brought in a verdict against the defendants.

"Personally I do not agree with that contention. I feel that the question of liability is a clear one, and that the proposition of serving the ultimatum, followed by the pulling of the switch, positively fixed liability upon the part of the defendants; so I can well understand how the Supreme Court determined that it would be a waste of time to go into that question any further, because any jury, whether they liked the plaintiff or not, would almost necessarily have to bring in a verdict in his favor.  *   *   *

"The question of damages is fundamentally a question for a jury to pass upon. The jury in our case heard the alleged contradictions of the plaintiff and the supposed perjury. It was gone into very carefully by counsel for the various defendants; the case was elaborately tried, and very vehemently argued. No detail of testimony was left untouched. It seems to me that if this jury felt that Mr. Rich was a liar, they would have reflected that finding in their verdict. Possibly they did. They did disallow him certain items which he claimed: For instance, the amounts unpaid on various instalment contracts; but I think that this jury probably recognized that, in almost every lawsuit, witnesses disagree, and it is not always necessarily perjury. Sometimes witnesses forget; particularly, interested witnesses are prone to give testimony favorable to their side which is mistaken—maybe an honest mistake. But I feel that this jury very carefully weighed the testimony, and, under the special questions submitted, they figured out the amounts to the

penny which they found the plaintiff was entitled to, and I would think that it would be presumptuous on my part, and wholly unwarranted, to grant the motion which I have referred to. That motion is therefore denied.   *   *   *

"The last motion urged today is defendants' motion to amend the verdict by reducing the same, particularly by disallowing certain items which the jury allowed. That motion is denied.

"The jury's verdict totals $8,233.78. On the original trial the verdict was in excess of $15,000. This court reduced that verdict to $8,500. Upon the second trial, as I have already noted, the defendants' case was much more thoroughly and effectively presented. More detailed evidence was received regarding the items of damages, and then the court, instead of asking the jury to bring in a general verdict, submitted five special questions, one of which had two subdivisions, so we really had six special questions. The jury went into these various items very carefully and fixed the amount awarded to the penny. Mr. Cohane has produced an affidavit of the foreman of the jury, who I understand is a bookkeeper.

"Mr. Cohane: He is a teacher of bookkeeping in the Business Institute.

"The Court: And he gave to Mr. Cohane the original memorandum used by the jury in reaching its verdict. I am not passing upon the admissibility of this memorandum at this time. However, I have looked at it, and I do not feel that, even if it is admissible, its contents should operate in favor of the defendants, because it is my impression that the jury has scaled down the claims of the plaintiff and allowed him practically a minimum of what he claimed, and disallowed practically all questioned items. There are a few, particularly the Burgess Ice Machine Company account, where there was a conflict of testimony, and the jury has allowed certain items which the plaintiff claimed and which the de-

fendant denied, but, generally speaking, the verdict, I would say, is quite a conservative one.

"While the presentation in this case was much more careful, for the defendants, than it was in the preceding case, nevertheless the result reached, by coincidence or otherwise, is practically the same. This court, on the first trial, as I say, reduced the verdict to $8,500. The jury in this case fixed the verdict at $8,233.78. In both cases the plaintiff sued for $50,000. The jury, as I have said, has itemized the various particulars of the plaintiff's case, and it is quite striking to me that their verdict comes within $300 of my determination of what was fair upon the first trial.  *  *  *

"There is ample testimony in the record, in my opinion, to justify the answer to question number 1, specifying the amount representing actual cash expended by the plaintiff in his plant and equipment. The jury, according to the foreman, itemized these various particulars and allowed the plaintiff what would be practically a minimum of his claim.

"There is no dispute that there was sufficien'. testimony in the record to justify the second item of loss of ice cream at $400.

"With regard to the next two items, loss of salary, which the jury fixed at $3,466.75, and loss of profit, $750, both of these are considerably less than the amount claimed by the plaintiff. A notation by the jury, on this memorandum furnished by the foreman, Knight, indicates that they computed a maximum possible loss of salary of $4,517.50 and deducted from that the sum of $1,050.75, representing, I presume, actual earnings of the plaintiff following the breach of contract, as well as the amount that he might possibly have earned during that period, bringing the actual loss of earnings down to $3,466.75. I am persuaded that the jury came to the conclusion that this man was an experienced ice-cream pasteurizer and manufacturer, and that he at least would have been able to make a living out

of this business if he had continued. A living wage was anywhere from $30 to $35 a week. The contract was for three years. Defendants breached it within two and a half months after it started; and I think the jury felt and I think determined wisely and properly that, if he had continued, having in mind his experience and ability, and having in mind what he had already accomplished up to that time, he very probably would have been able to keep the business going for the balance of the term, and probably would have at least made a living wage out of it.

"The next item, $750 loss of profits, was allowed although plaintiff claimed something over $34,000. * * *

"Plaintiff claimed $250 a week. The jury allowed him $250 a year. I think that there is ample testimony in the record to justify that allowance. So also with the next item, $500 for damage caused by defendants for loss of credit, business reputation and good will; it seems to me that there is plenty of evidence in the record justifying that item.

"With regard to the last item, the rule is laid down in the case of *Ludwigsen* v. *Larsen*, 227 Mich. 528, at p. 532, which was a tort case for wrongful eviction from leased premises. I take it that the rule stated there (the case being decided in 1924) would be applicable in our case. On page 531 the court, in commenting upon actions on contract, said:

" 'In actions on contract, where the profits are in their nature contingent on opportunity, successful operation, and other uncertain happenings, courts have been loath to allow them to be considered as elements of damage, although, in certain cases, where found to have been in contemplation of the parties, the jury have been permitted to consider them with the other proof submitted in determining the just compensation to which plaintiff was entitled. *Fell* v. *Newberry,* 106 Mich. 542; *Industrial Works* v.

*Mitchell,* 114 Mich. 29, 34; *Quay* v. *Railway Co.,* 153 Mich. 567 (18 L. R. A. [N.S.] 250).

"'The holding, however, in this State, has been quite uniform that in an action of tort such as we have here a more liberal rule will be applied. When the amount of profit lost by the wrongful act of a landlord can be shown with reasonable certainty, and is not so remote, speculative or contingent as to form no reliable basis for a determination as to loss, evidence of the profits gained in the conduct of a business and the probability of their continuance had not the business been interrupted by the ouster, may be shown and may constitute a measure by which, in addition to any other relevant facts which may be established, the damages sustained by the interruption of the business may be fixed.'

"The language above was, in substance, quoted to the jury in the charge of the court. The jury was instructed that they could not speculate but must assess damages only upon those items which were shown with reasonable certainty, and where the damages claimed were not remote, speculative, or contingent so that there could be formed no reliable basis for a determination as to loss. The jury, in my opinion, followed those instructions and did bring in a verdict based upon a reasonable certainty.

"I might also make this comment, that much has been said by defendants on the point that this business had been operating such a short time that the jury could not properly decide what the profit could be in the following years; and various cases are cited, including the one (*Isbell* v. *Anderson Carriage Co.,* 170 Mich. 304), that, as I recall it, had to do with the sale of electric automobiles, and the court, in that case, commented on the fact that it was more or less of an experimental business. In our case, the ice-cream business, of course, was not a new business. It is an established type of business, and even though this particular concern had

been in business only a short time, nevertheless it seems to me that it was a reasonable time upon which a jury could base its verdict. The business was not an experimental one. It was an established type of business, and, as the court explained to the jury, which the jury no doubt already knew, that it was a seasonable business, and I think the verdict of the jury reflected the fact that they did find that the plaintiff probably would not make money in the wintertime, and possibly might lose money. That is why they allowed him such a small amount for profits.

"For the reasons which I have outlined the motion is denied."

By approval of the trial court's disposition of the various motions made by defendants and by approval of his charge to the jury, in which we find no prejudicial error, we have disposed of at least 8 of the 15 alleged errors contained in appellants' statement of questions involved.

Four of the remaining questions raised relate to the rulings of the court on the admission or rejection of testimony. Our review of the record discloses that these objections are so trivial as to merit no discussion.

Appellants insist that it was error for the trial court to send only part of the exhibits to the jury room. We think this action on the part of the court necessitates a recital of what actually happened when this was done. We quote the following from the record:

"*The Court:* By the way, gentlemen, with regard to the exhibits, is it agreeable that all exhibits that have been introduced in the case be submitted to the jury?

"*Mr. Kahn:* Yes, your honor.

"*Mr. Cohane:* No, your honor.

"*The Court:* Do you want any of them submitted or none of them?

"*Mr. Cohane:* None of them.

"*The Court:* What about if the jury requests it?

"*Mr. Cohane:* The answer is still no on our part.

"*Mr. Kahn:* That is a discretionary matter with the court: I am satisfied to have the jury have all the exhibits.

"*The Court:* I think I would be inclined to follow the rule laid down in 1 Searl, Michigan Pleading & Practice, p. 400, where a number of Michigan Supreme Court decisions are cited.

"*Mr. Cohane:* If such a ruling is made by the court over our objection, what exhibits are they to have?

"*The Court:* I presume all of them.

"*Mr. Kahn:* I should think they ought to have all of them.

"*The Court:* I don't see how they can decide this case intelligently without them.

"*Mr. Stanton:* A lot of them aren't here.

"*The Court:* Mr. Cohane, all that are, and are available; if they ask for any that are not here we will have to get them for them. That is all.

"*Mr. Cohane:* Are you going to wait for them to ask what exhibits they want?

"*The Court:* I think that all exhibits that are available here in the court room should be given to them now. Then if there are any that are missing that they want, I think they should be procured and given to them because it is an absolute absurdity to ask this jury in this type of case to decide it intelligently without these books and figures in front of them.

"*Mr. Cohane:* All right.   *   *   *

"*Mr. Stanton:* A lot of them, like the bank records and things like that aren't here.

"*The Court:* We have had the banker in once before. We will get him in again if necessary.

"*Mr. Cohane:* I object to the exhibits going in at all and I object to only part of the exhibits going in unless they all go in, and they not being here, being in possession of the bank, General Motors, trust companies, and the common pleas court and the recorder's court of the city of Detroit, it does not seem advisable at least now to turn them all into the jury. I don't think it is fair to let them have some and not all.

"*The Court:* All right.   Objection overruled.

"*Mr. Kahn:* All of our exhibits are here as far as I know. I think they are all here.

"*The Court:* I wish you gentlemen would now collect all the exhibits that you have so we can have them ready to give to the jury.

"*Mr. Stanton:* I wish we had had some notice of this before.

"*The Court:* Maybe I better adjourn the case for a couple of weeks and give you time to get them in. Would you want to do that?

"*Mr. Stanton:* I don't quite understand your honor on that.

"*The Court:* I say do you want me to put the case over a little while to give you time to do that?

"*Mr. Cohane:* If your honor please, I hope you will bear in mind our part of the case took two and a half days out of the three weeks we have been here.

"*The Court:* Get your exhibits that you have got, and get them together, will you, please?

"*Mr. Cohane:* I am doing that, your honor.

"*The Court:* Will you call in the jury now, please, Mr. Sheriff?

"*Mr. Cohane:* Exhibits which defendant has here and is presenting to the jury under the orders of the court are Exhibits 51, 52, 54, 44, 44A, 67, 35, 48 and 48A and photostatic copies of 30, 32 and 32B, 29A, 68 and 47.

"*Mr. Lamphere:* Our exhibits are Exhibits 1 to 28, inclusive, 32, 33, 34, 39, 40, 41, 42, 45, 56, 58, 59, 60, 61, 62 and 57.''

The proper place for exhibits is in the court room until the determination of the trial, and if all of defendants' exhibits had been present they would have been given to the jury. The furnishing of exhibits to the jury rests in the sound discretion of the trial court (1 Searl, Michigan Pleading & Practice, p. 400, § 326, and cases there cited), and in this case the discretion was not abused.

During the deliberations of the jury, the foreman made the following request.

"Could we have a transcript of the testimony involving the wages earned by Mr. Rich after the breach of contract? There is some question there we are not quite clear about."

The court then asked the jury to retire and consider some other phase of the case, stating,

"In the meantime the reporter will look up his notes on that particular phase of the case and as soon as he has found them, we will call you in and read that part of the testimony to you."

Attorneys for defendants object to this procedure unless the testimony of three witnesses for defendants was also read to the jury. This the court declined to do unless such request came from the jury, saying:

"The jury is asking for particular testimony and I think it fair to assume they have in mind the testimony of these other three witnesses; all they want is the details of Mr. Rich's testimony as to when he worked and when he didn't work after August, 1936."

The reporter was directed by the court to secure a transcript of the testimony of Mr. Rich involving the wages earned by him after the breach of the contract. In connection therewith, the following colloquy occurred:

"*Mr. Cohane:* That is over our objection, then, and for the reason, given, that it is not complete without the testimony of Dana, Ulatowski and Peters. On the subject of Peter Rich's earnings, I want to say on this record that I think such cross-examination as there was on that subject ought to be read to them as part of it, if any is read, as well as the testimony of the three witnesses I have mentioned.

"*The Court:* What do you claim was the substance of the cross-examination?

"*Mr. Cohane:* My recollection of the substance of it was—I do not have a clear recollection of it. I cannot tell without reference to the testimony and it would not be fair to the court or to me to attempt to state what it was without a clear recollection of it. *    *    *

"I would like to have the record show, if your honor please, what part of the testimony the reporter does read to the jury.

"*The Court:* All right."

The reporter's note shows that he read to the jury the testimony given by plaintiff on direct examination. Evidently the notes showed no cross-examination by defendants' counsel on this subject, and our examination of the record discloses there was no cross-examination of plaintiff on the subject matter concerning which the jury desired information. We, therefore, find no basis for defendants' claim of error on this point.

The remaining claimed error by defendants is that it was erroneous for the trial court to submit six special questions to the jury after the argument of the case, and in refusing "appellants' request for re-argument, under the statute and court rules."

In the instant case, neither plaintiff nor defendants requested the submission of any special questions to the jury in accordance with Court Rule

No. 37, § 7 (1933), but the trial court, on his own motion, directed the jury to find a special verdict under the authority of said section of the above-mentioned rule which provides, in part:

"In any civil case, the court in its discretion *may at any time,* on its own motion or on request of either party, direct the jury to find a special verdict, and in such case no general verdict shall be returned. Such verdict shall be prepared by the court in the form of questions in writing, relating only to material issues of fact and admitting a direct answer, to which the jury shall make answer in writing: Instructions to the jury shall be limited to such matters as are material to the questions submitted." (Italics ours.)

It certainly was within the discretion of the trial court as to whether or not the jury should be directed to return a special verdict. In this instance, that discretion was not only not abused, but under the circumstances and intricacies involved, the court should be commended for so doing as well as for the exhaustive and impartial instructions given upon all issues.

We know of no authority either requiring or authorizing the trial court to permit a reargument to the jury after instructions to them requiring a special finding or verdict on his own motion.

The judgment is affirmed, with costs to plaintiff.

BOYLES, NORTH, STARR, WIEST, BUTZEL, and SHARPE, JJ., concurred. BUSHNELL, J., did not sit.