### STIMAC v. WISSMAN.

1. EVIDENCE—PAROL EVIDENCE—PARTIAL INTEGRATION OF TRANSACTION.

Parol evidence is inadmissible to dispute the terms of a document required by law to be in writing for so much of the transaction as is required to be and is embodied in the document, but may be admitted as to the remainder.

2. SAME — PARTIAL INTEGRATION — SILENCE — INTENT — PAROL EVIDENCE.

The inquiry to be undertaken when only a part of a transaction is reduced to writing must relate to whether or not the writing

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 20 Am Jur, Evidence §§ 1135–1138.
[1–3] Parol evidence rule: Tests for determining whether entire agreement is embodied in the writing (rule of integration). 70 ALR 752.
[3] 20 Am Jur, Evidence §§ 1140, 1141.
[4] 32 Am Jur, Landlord and Tenant §§ 130, 133.
[5] 32 Am Jur, Landlord and Tenant §§ 142, 268.
[6] 15 Am Jur, Damages §§ 23, 356.
[7] 15 Am Jur, Damages § 150.
[8] 15 Am Jur, Damages §§ 158, 353.
[9, 10] See, generally, 32 Am Jur, Landlord and Tenant § 826.

was intended to cover a certain subject and when the instrument is completely silent on the subject the intent will be sought in the conduct and language of the parties and the surrounding circumstances.

3. SAME—PAROL EVIDENCE—INDUCEMENT.

Any independent fact or collateral parol agreement, whether contemporaneous with or preliminary to the main contract in writing, may be proved, provided it does not interfere with the terms of the written contract, though it may relate to the same subject matter or have served as an inducement for entering into the written agreement.

4. LANDLORD AND TENANT—COLLATERAL AGREEMENT TO LEASE—WATER.

It was not error for the trial court to permit plaintiff tenants to show by parol evidence that there was an implied, if not an express, collateral agreement by defendants to furnish water for the duration of a 10-year lease of premises which had been built for use as a drive-in restaurant with plumbing facilities and toilet rooms and water was being supplied from a well on adjoining premises owned by defendant wife subject to a life estate in her parents at time possession by plaintiffs was taken and execution of lease which was silent as to water supply.

5. SAME—COVENANT FOR QUIET ENJOYMENT—DRIVE-IN RESTAURANT.

Whether or not defendant landlords breached their covenant for quiet enjoyment by failing to continue to supply water used in maintaining premises as a drive-in restaurant is not determined, where it is determined that parol evidence was admissible to show there was an implied, if not an express, collateral independent promise not contained in the written lease.

6. DAMAGES—EVIDENCE.

Mathematical precision as to damages is not required in situations of injury, where the very nature of the circumstances makes precision unattainable.

7. SAME—LOSS OF PROFITS—EVIDENCE.

Loss of profits, claimed as an element of damages, must be shown with such reasonable degree of certainty as the situation permits. ..

8. SAME—LOSS OF PROFITS—EVIDENCE.

Damages from loss of profits from inability to operate a drive-in restaurant was shown with requisite certainty, where based on

profits realized during a like period for the preceding year, with mitigation as to earnings received elsewhere.

9. LANDLORD AND TENANT—NONPAYMENT OF RENT—CANCELLATION OF LEASE—RECORD.

Trial court's denial of cancellation of lease for nonpayment of rent and other reasons *held,* proper, under record presented.

10. SAME—CANCELLATION OF LEASE—MOOT QUESTION.

The issue of cancellation of a 10-year lease became moot when it was cancelled by mutual agreement of the parties.

Appeal from Van Buren; Mosier (Carl D.), J. Submitted January 5, 1955. (Docket No. 18, Calendar No. 45,960.) Decided March 9, 1955.

Bill by Michael Stimac and Lois Stimac against Hubert Wissman and Clara Wissman to enjoin interference with leasehold, for damages and other relief. Cross bill asking cancellation of lease. Decree for plaintiffs. Defendants appeal. Affirmed.

*Meyer Warshawsky,* for plaintiffs.

*William J. Hover,* for defendants.

SMITH, J. The defendants, Hubert Wissman and Clara Wissman, husband and wife, owned real property located on highway US–31 near the city of South Haven, Michigan. Upon this property they constructed a building equipped with plumbing facilities and toilet rooms for use as a drive-in restaurant. To serve its intended purpose it was necessary that the project have water. None was municipally furnished to the property. The defendants accordingly ran a pipe into the building from an adjacent property upon which there was a producing well in operation. The adjacent property was owned by defendant Clara Wissman, subject to a life estate in her mother and father, the Hansens, Anton and Marie.

The plaintiffs, Michael Stimac and Lois Stimac, husband and wife, leased the property from the defendants for a term of 10 years. The lease stated that the property was "to be occupied for restaurant and lunch stand purposes and all purposes incidental thereto." Rental was at a stipulated sum, or a percentage of the net profits, whichever might be greater. The instrument was completely silent as to water, its supply, its use, or payment therefor. The facilities, however, could not have been used for their intended purpose without water and it is significant that water was furnished to the premises from the defendants' well at the time plaintiffs commenced their business operations, May 12, 1949, and at the date of the actual execution of the lease, May 18th. There was also some testimony that defendant Hubert Wissman had informed plaintiff Michael Stimac subsequent to the entry upon the lease that the water supply was sufficient for the business. Difficulties between the parties developed in a short time and were not ameliorated with the passage of time. They ranged a broad field, embracing ultimately matters of accounting for the profits, together with allegations of nonpayment of rent, as well as other complaints. We have considered them all, together with the explanations offered therefor, and we will relate only such of those as are necessary to an understanding of the issues on appeal.

Defendant Wissman's control of the water supply invested him with a ready means of persuasion of his tenants, a means he did not hesitate to employ. The water was turned off twice in the summer of 1949, the defendants thereby seeking, in the words of the trial court, "to bring their differences to a settlement." The building was closed for the winter at the end of the 1949 season. Plaintiffs testified that they intended to open the restaurant in the spring of 1950, but the matter was then in litigation,

differences having persisted between the parties concerning interpretation of the lease and matters of accounting. Decree in such case was entered on June 22, 1950, and plaintiffs took immediate steps to reopen their restaurant. They were again faced with a lack of water.

After demand therefor had been made and refused, plaintiffs employed a well driller to drill for water on the property. The defendants reacted with some violence to this move on the part of the tenants, the trial court noting that "they endeavored by language and threats to induce the well drillers to leave." After some delay, however, the well was completed and the restaurant finally opened for business on August 5, 1950.

It would serve no useful purpose to relate in greater detail the various measures and stratagems employed by the disputants. Enough has been said to indicate the general atmosphere in which the parties sought to resolve their differences. Plaintiffs brought a bill in equity praying injunctive relief against defendants' interference with plaintiffs' business, for assessment of damages, and for other relief. Defendants denied necessity for relief prayed and filed a cross bill for cancellation of the lease, with incidental relief. The trial court, after hearing, denied the cross bill, granted injunctive relief, ordered plaintiffs' payment of certain rent moneys, assessed damages in the sum of $940, and granted other relief. Defendants have appealed.

The appellants insist that they were not required by their agreement with plaintiffs to furnish water and that, since the lease did not present words of ambiguity with respect to water, but rather complete silence, parol could not be heard on the alleged duty to supply. They also object to the computation of damages involved.

The primary issue relates to the alleged duty to furnish water to the plaintiffs, and we will examine such issue in some detail. The lease, as noted above, was completely silent on the point. Is parol admissible with respect thereto?

The narrow issue presented is but a facet of a much broader principle relating to the use of parol. There is no doubt, as Wigmore phrases it (9 Wigmore, Evidence [3d ed], § 2430, p 97) that:

"The most usual controversy arises in cases of *partial integration, i.e.,* where a certain part of a transaction has been embodied in a single writing, but another part has been left in some other form. Here obviously the rule against disputing the terms of the document will be applicable to *so much of the transaction as is so embodied, but not to the remainder.*"

The inquiry to be undertaken, then, must relate to whether or not the writing was intended to cover a certain subject. As to this the learned author states that (the instrument being completely silent on the subject) the intent will be sought in the conduct and language of the parties and the surrounding circumstances.

In accordance with this rule our Court has permitted the use of parol in a variety of situations. Thus in *Clare County Savings Bank* v. *Featherly,* 173 Mich 292, 302, in a case involving a promissory note, the Court quotes with approval from 21 Am & Eng Enc Law (2d ed), pp 1094–1096, as follows:

" 'Again, the parties to a written agreement, which is complete in itself, may at the time of its execution, or previously, have entered into a collateral parol agreement concerning some matter on which the written instrument is silent, and the rule does not preclude the proof of such collateral agreement, provided no attempt is made to vary or contradict the writing. Any independent fact or collateral parol

agreement, whether contemporaneous with or preliminary to the main contract in writing, may be proved, provided it does not interfere with the terms of the written contract, though it may relate to the same subject matter.'"

The Court then continues:

"The rule excluding parol evidence to vary or contradict a writing does not extend so far as to preclude the admission of extrinsic evidence to show prior or contemporaneous collateral parol agreements between the parties. The general rule admitting evidence of a collateral agreement is especially applicable where such agreement operates as an inducement for entering into the written agreement."

The rule was also applied in *Sharrar* v. *Wayne Savings Ass'n*, 246 Mich 225 (stock subscription case), in *Stifter* v. *Hartman*, 225 Mich 101 (sublease), and recently in *Rex Oil & Gas Company* v. *Busk*, 335 Mich 368 (option). Its application to leases is extensively annotated in 151 ALR 279, supplementing 25 ALR 787 and 88 ALR 1380.

Its application in the case at bar by the trial court was obviously proper. Since the lease was utterly silent as to water, it was competent to inquire into the circumstances surrounding the transaction. When we consider that the building was constructed and leased for the operation of a restaurant, that it was supplied with plumbing fixtures, inside toilets rather than outside privies, that water was supplied to the building at the time the business was commenced, and at the time the lease was entered into, and, finally, that a supply of water was not merely convenient but essential to the conduct of the business as obviously intended by both parties, we agree with the trial court that the parties intended that water would be furnished by the defendants. There

was an implied, if not an express, collateral independent promise, not covered or attempted to be covered by the writing, to furnish water for the duration of the lease. The showing thereof conflicts in no way with the parol evidence rule.

Under the view thus taken, we do not deem it necessary to discuss the argument urged upon us that the defendants also breached their covenant for quiet enjoyment. *Grinnell Brothers* v. *Asiuliewicz,* 241 Mich 186.

The matter of damages remains to be passed upon. The lease provided that the tenants should pay "for rent of said premises for said term the sum of $400 per year or 30% of the net profits acquired by second parties in the operation of said business, whichever is greater." It also provided: "That the second parties will receive a salary of $75 per week from the gross profits before the net profits are determined."

The accounting under the lease proved to be as troublesome to the parties as the matter of the water supply. As stated, a bill in chancery for an accounting, instituted by the present defendants, was heard prior to the institution of the case at bar and decree entered therein on June 22, 1950 by the same court as that from which this appeal was taken. Following the entry of the decree, plaintiffs experienced considerable difficulty in obtaining necessary keys and water, delaying their resumption of operations until August 5th. Plaintiffs testified that they had intended opening the restaurant in the spring of 1950, as they had the previous years, but the decree in the accounting action was not entered until June 22d. In the previous year the profits from May 12th (date of opening) to August 4th were $1,023.77, and damages in this amount were claimed by plaintiffs because of the delay due to defendants' opposition. The trial court, however, allowed only $700 of this

sum, assessing the damages for the period from June 22d, when the decree in the prior case was entered, to August 5th, when operations were resumed. To this amount the trial court added 6 weeks of plaintiff's wages at $75 per week, less wages he received from other employment, at $35 per week, for the same period, a net addition of $240 to the above $700. The defendants, however, assert that in the year 1950 business was not as good as in 1949, that, in fact, the plaintiffs' own figures show a falling off in business and, hence, that the 1949 figures should not be used. It is obvious that the 2 years are not precisely comparable. The year 1949 saw a full season's operations, marred only by occasional interruptions. The year 1950 saw a complete obstruction of plaintiffs' operations because of defendants' wrongful acts, resulting in an opening late in the season. It might well have been expected that in the 2 years there would be a substantial difference in revenues, even for comparable periods. We do not, however, in the assessment of damages, require a mathematical precision in situations of injury where, from the very nature of the circumstances, precision is unattainable. We do require that the amount of profit lost be shown with such reasonable degree of certainty as the situation permits. We are of the opinion that it was so here shown, being based upon profits realized during a like period for the preceding year, with mitigation as to earnings received elsewhere. *Rich* v. *Daily Creamery Company*, 303 Mich 344.

The appellants' cross bill in the court below prayed a cancellation of the lease for nonpayment of rent and other reasons. The trial court denied such relief, with which denial we are in full accord. At the present time the issue of cancellation is moot, the lease having been cancelled in 1953 by mutual agreement of the parties.

The decree of the lower court is affirmed. Costs to appellees.

Carr, C. J., and Butzel, Sharpe, Boyles, Reid, Dethmers, and Kelly, JJ., concurred.