BOOTH *v*. BOND.

1. AUTOMOBILES—NEGLIGENCE OF DRIVER NOT IMPUTED TO PASSENGERS.

The negligence, if any, of the driver of car in which his wife and daughter were passengers is not chargeable to the latter in actions for injuries to the passengers against owner of other car involved in accident and whose driver was found to have been negligent and there was ample evidence to sustain such finding (CLS 1956, § 257.401 *et seq.*).

2. SAME—NEGLIGENCE OF DRIVER NOT IMPUTED TO PASSENGERS—IRRECONCILABLE VERDICT.

Judgment for defendant, owner of car involved in action by administrator of estate of wife who was a passenger of other car, is reversed, where she was not shown to have been guilty of contributory negligence and verdict for defendant in her case was irreconcilable with verdict against same defendant in favor of her minor daughter in contemporaneous action, since the contributory negligence, if any, of the driver of car in which they were riding was not imputable to them as passengers (CLS 1956, § 257.401 *et seq.*).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2]  5A Am Jur, Automobiles and Highway Traffic § 817.
Negligence of driver of automobile as imputable to passenger. 90 ALR 630, 123 ALR 1171.
Negligence of one spouse as imputable to other because of the marital relationship itself.  110 ALR 1099.
[3]  5A Am Jur, Automobiles and Highway Traffic § 910.

3. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.

Plaintiff administrator of estate of decedent who was driving car involved in accident at 10:30 p.m. in February, 1954, then had burden of proof to show that his decedent was free from contributory negligence proximately causing the accident.

4. AUTOMOBILES — CONTRIBUTORY NEGLIGENCE — VERDICT — GREAT WEIGHT OF EVIDENCE.

Verdict for defendant in action by administrator of estate of motorist killed in collision with defendant's car *held*, not clearly against the great weight of the evidence in view of the absence of conclusive evidence as to the point of impact and the testimony showing location of the cars after the accident and photographs of the damaged cars, since it cannot be said, as a matter of law, that plaintiff's decedent did not fail in some degree in his duty to observe and react to approaching danger.

Appeal from Genesee; Roth (Stephen J.), J. Submitted June 5, 1958. (Docket Nos. 25, 26, Calendar Nos. 47,193, 47,194.) Decided December 3, 1958.

Case by Herbert J. Booth, administrator of the estate of William Melvin Lemin, deceased, under the death act for damages resulting from automobile collision. Similar action by Herbert J. Booth, administrator of the estate of Carol Lemin, deceased.

Cases combined for trial, together with a third case for personal injuries to a minor child in which there was an award of damages.

Verdicts and judgments for defendant. Plaintiffs appeal in consolidated cases. Affirmed as to estate of William Melvin Lemin. Case of Booth, administrator of estate of Carol Lemin, reversed and remanded for new trial.

*Michael W. Evanoff* (*Gault, Davison & Bowers*, of counsel), for plaintiffs.

*Milliken & Magee* (*Herbert A. Milliken, Jr.*, of counsel), for defendant.

EDWARDS, J. This case involves one of those tragic automobile accidents which couldn't happen—but did. Five people died in it.

On the night of February 7, 1954, at 10:30 p.m., on Lapeer road just west of Davison, Michigan, 2 automobiles collided almost head-on. The driver of one car, Russell Bond, son of defendant owner herein, was killed and his Ford car demolished. In the other automobile—a Buick, which was also completely demolished, the father, the mother, and 2 children of the Lemin family were killed, and the surviving child, Janice, was severely injured.

The Lemin family had spent the evening visiting relatives in Grand Blanc and were en route to their home near Davison, traveling east on Lapeer road. Russell Bond and a friend had dates in Flint in the evening and subsequently planned to meet at a drive-in restaurant near Davison. The facts of the accident, however, appear to indicate that the Bond car at the time in question was traveling west on Lapeer road—away from the drive-in restaurant which was his announced destination when he was last seen alive.

The point of the collision was a stretch of straight black-topped road running generally east and west, with no intersections, obstructions, hills or curves. The pavement was 18 feet wide. The posted speed limit was 45 miles per hour. The night was dark but there was neither rain nor snow falling. A wind was blowing and some previously-fallen snow was being driven by it.

The 2 drivers had good reputations in the community as to habits and steadiness. There was no testimony which indicated any drinking. Yet the 2 deputy sheriffs who responded to an emergency call found 5 persons dead or dying in 2 demolished automobiles, and the ambulance service proved of use only to the 4-year-old child, Janice.

The deputies found the Buick on the south side of the road (the right side as the Lemins were traveling), "headed in kind of a northeasterly direction from the south side of the pavement." The entire left front of the automobile back as far as the driver's door was smashed in. The deputies located impact debris in front of the Buick on the south side of the road.

They also found the Ford 5 to 10 feet farther west and in the ditch on the opposite or north side of the road, turned upside down. They turned it over toward the road to remove Bond. Neither could testify as to whether there was impact debris on the north side of the road beyond saying that they did not recollect whether or not there was any.

From pictures of the cars in the positions last described which were exhibits at the trial, we find that the whole front end of the Ford was smashed in although obviously the main force of the blow hit in the vicinity of the left front wheel.

As far as this record discloses, there were only 2 persons who saw anything of what happened. They were a young man and his fiancee who were traveling east on Lapeer road "half to three quarters of a block" behind the Buick. The young man's story of the accident supplies all of the other relevant facts which we can glean:

"*Q.* Well, where was the Buick prior to the accident, as you were following it?

"*A.* Oh, just ahead of me. I seen the headlights, I mean, the tail lights.

"*Q.* I see; on what side of the road, Lapeer road? That is, north or south, was the Buick?

"*A.* South side. * * *

"*Q.* Will you tell us what happened then as you were proceeding behind this Buick car?

"*A.* Well, just beyond Center road the accident occurred. The first thing we noticed was sparks,

dust, or more or less turmoil there, and I put on the bright lights right away and I still seen some movement. There was a Ford, I don't know just which way it was going over, flipping over or something. It was just settling, and I proceeded up to it. We were approaching it pretty close and slowing down; put it in second gear and made sure there was nobody laying in the road or anything, and my wife and I went to the nearest house where there was a light, and the people there notified the police and an ambulance.

"*Q.* How fast were you going shortly before the accident?

"*A.* Right around 35, and not more than 40.

"*Q.* How fast do you believe the Buick was going at that time?

"*A.* I believe it was going about the same speed in order for me to keep up with it.

"*Q.* Did you appear to be gaining on it in any way?

"*A.* No.

"*Q.* You were traveling about the same?

"*A.* I kept about the same distance away.   *   *   *

"*Q.* Now, on which side of the road, south or north, was the Buick that you saw ahead of you just before you saw this flash and smoke?

"*A.* On the south side.

"*Q.* Were the Buick's tail lights at any time out of your line of vision?

"*A.* No.

"*Q.* You saw them at all times?

"*A.* Yes.

"*Q.* Did that Buick car, or its tail lights, ever swerve off to the left and onto the north side of the road?

"*A.* No.

"*Q.* Was your attention distracted in any way away from the car, or were you looking at that car at all times?

"*A.* I was looking straight ahead at the car and road, about everything in general, straight ahead."

Vigorous cross-examination by counsel for defendant produced such questions and answers as these as to observation at the instant of impact:

"*Q.* All right, as far as your observation, what you saw, the car traveling ahead of you could have been on the left, or north side of the center, or right and south side of the center at the time the cars came together, isn't that right?

"*A.* It could have been, but I don't believe it. * * *

"*Q.* Did you observe this Buick on its own side of the center line just an instant before the crash?

"*A.* I will say, yes. * * *

"*Q.* From your observation, or lack of observation, whichever it may be, you wouldn't want to say, as a matter of fact, which side of the center line this accident happened on, would you?

"*A.* No."

Under the owner liability act (CLS 1956, § 257.401 *et seq.* [Stat Ann 1952 Rev § 9.2101 *et seq.*]), 3 suits were filed as a result of this accident against the owner of the Ford automobile, the mother of the deceased driver, Russell Bond. No question is presented as to the owner's consent to the use of the automobile.

Plaintiffs in the 3 suits, which were consolidated for trial before a jury, were William A. Shaheen, guardian of Janice Lemin, and Herbert J. Booth, the latter in dual capacity as administrator of the estate of both William Lemin, the father, and Carol Lemin, the mother. The Shaheen suit sought damages for Janice's hospital and medical expenses and for injuries suffered in the accident. The Booth suits were for the funeral expenses of the father and mother, and for pecuniary damages suffered by Janice due to loss of support.

The jury rendered a verdict of $7,000 in the Shaheen suit from which no appeal was taken, and no

cause for action in relation to the other 2 cases. The trial judge entered the verdicts, as stated, as the judgments of the court, and subsequently denied motions for new trials in both estate cases. These appeals followed.

The language used in the jury verdict is relevant to the issues on appeal and we quote it verbatim:

"*The Court:* * * * The first case is that of Herbert J. Booth, administrator of the estate of Carol Lemin, against Evelyn Bond, and that is the case of the mother.

"*Deputy Palmer:* For whom do you find?

"*The Foreman:* There were no damages allowed to Carol.

"*The Court:* A verdict of no cause for action?

"*The Foreman:* No cause for action.

"*The Court:* The second case is case 35,098, William A. Saheen, guardian of Janice Marie Lemin, a minor, *v.* Evelyn Bond. That is the case for the little girl.

"*The Foreman:* We award $7,000 damages to Carol,—or Janice Lemin.

"*The Court:* And in the case of Herbert J. Booth, administrator of the estate of William Lemin, deceased, and State Farm Mutual Automobile Insurance Company, subrogee, plaintiff, *v.* Evelyn F. Bond?

"*The Foreman:* Is this Russell Bond?

"*The Court:* No, Evelyn Bond; they are all against Evelyn Bond.

"*The Foreman:* Well, in that case we found there was negligence on the part of Russell Bond.

"*The Court:* Well, he, of course, is a defendant. The defendant's driver, is that what you mean?

"*The Foreman:* Well, maybe I misunderstood you.

"*The Court:* This is the case of the man who was driving the Buick car, *v.* the owner of the Ford car.

"*The Foreman:* Oh, no cause for action on that one, and there were no damages awarded.

*"The Court:* So in the 2 cases you have returned verdicts of no cause for action, is that correct?

*"The Foreman:* Yes."

The trial judge had previously charged the jury as to contributory negligence as a bar to recovery, presumably in relation to the suit filed by the administrator of the estate of the father whom all parties treated as the driver of the Lemin automobile. He then added, correctly we believe:

"In this case I charge you that the negligence, if any, of the plaintiff—yes, the plaintiff, William Lemin, is not chargeable to either Janice Marie Lemin or Carol Lemin."

We believe that the case of Booth, administrator of the estate of Carol Lemin, *v.* Bond should be reversed for new trial. It is plain that the jury found Russell Bond guilty of negligence which contributed as a proximate cause to the happening of this accident. There was, in our view, ample evidence from that which we have quoted to sustain this finding.

We believe the return of no cause for action in the Carol Lemin case was due either to the jury's failing to understand that damages as to her estate, in at least the amount of the funeral bills, were stipulated; or in failing to understand the instruction of the judge that the driver's negligence, if any, could not be charged to her.

See *Bricker* v. *Green,* 313 Mich 218 (163 ALR 697); *Sherman* v. *Korff,* 353 Mich 387; 2 Mich Civil Jur, Automobiles & Motor Vehicles, § 512, n 20, p 580.

Further, we have examined the record with care and find not a scintilla of evidence from which any inference of contributory negligence could be made as to the mother.

We would be inclined to reverse as to the mother's case upon the facts alone for the verdict as to her

appears plainly to be against the great weight of the evidence. Our inclination in this regard is strengthened, however, by the specific finding of negligence as to Russell Bond recorded in the jury's verdict, and by the fact that the verdict in Janice's case is plainly completely irreconcilable with that entered in the mother's case.

(On the effect of irreconcilable verdicts, see *Rosen* v. *Cathcart,* 245 App Div 736 [280 NYS 57]; *Watkins* v. *Myers,* 12 NJ 71 [95 A2d 705, 36 ALR2d 1330]; *Lanning* v. *Trenton & M. County Traction Corp.,* 3 NJ Misc 1006 [130 A 444]; 36 ALR2d 1333, annotation.

See, also, *Jakubiec* v. *Hasty,* 337 Mich 205; *Sadlowski* v. *Meeron,* 240 Mich 306, wherein judicial instructions to correct inconsistent verdicts were approved.)

As to the father's case, a different element is present. It is apparent from the briefs and the judge's charge that this case was tried under the assumption that there was a stipulation that William Lemin was driving the Buick automobile at the time of the accident. No contrary argument is addressed to us on appeal. Plaintiff Booth, as administrator of his estate, therefore, had the burden of proof to show that decedent, William Lemin, was himself free from negligence which contributed as a proximate cause to the happening of this accident.*

The trial judge instructed the jury as to the presumption of due care due both decedents. *Konieczny* v. *Detroit & Mackinac R. Co.,* 164 Mich 66; *Detroit Automobile Inter-Insurance Exchange* v. *Powe,* 348 Mich 548. But, as we have indicated, the jury returned a verdict of no cause for action in the father's case.

---

* This case was tried before the adoption of Rule No 23, § 3a, effective June 1, 1958 (352 Mich xiv), shifting the burden of proof as to contributory negligence to the defendant.

This Court is reluctant to interfere with the fact-finding function of the jury; and, for it to do so, the case must be very clear. *Detroit & Milwaukee R. Co.* v. *Van Steinburg,* 17 Mich 99; *Kaminski* v. *Grand Trunk Western R. Co.,* 347 Mich 417; *Ware* v. *Nelson,* 351 Mich 390.

Although there was, in our view, considerable evidence to sustain the jury finding of negligence as to Russell Bond, we cannot say that a jury finding of some negligence as to William Lemin which contributed as a proximate cause to the happening of this accident is clearly against the great weight of the evidence.

The jury may have given consideration to the photographic exhibits of the damaged cars, the testimony as to location of the cars after the accident, the absence of conclusive evidence as to the point of impact, and concluded that the Lemin car, as well as the Bond car, crossed the center line to some extent, or that William Lemin failed to some degree in his duty to observe and react to approaching danger.

The judgment of no cause for action entered in the case of Booth, administrator of the estate of Carol Lemin, *v.* Bond is vacated and the case is remanded for new trial, costs to await the final outcome. The judgment of no cause for action in the case of Booth, administrator of the estate of William Lemin, is affirmed, with costs to appellee.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, VOELKER, and KAVANAGH, JJ., concurred.