NATIONAL PHARMACEUTICAL SERVICES, INC. v HARRISON
COMMUNITY HOSPITAL

1. JURY—INCONSISTENT VERDICT—DIFFERENT LEGAL THEORIES—MUL-
   TIPLE DEFENDANTS.
   A jury verdict which is logically and legally inconsistent cannot
   be allowed to stand; however, where plaintiff sues different
   defendants, who are not joint wrongdoers, under different legal
   theories, the liability of the defendants need not be found
   equal.

2. JURY—VERDICTS—LOGICAL EXPLANATION—MULTIPLE DEFENDANTS.
   Jury verdicts which have a logical explanation will not be found
   inconsistent; where the jury could have logically found that the
   wrongful conduct of a certain defendant was of a more limited
   duration than that of another defendant, it is not inconsistent
   for the jury to determine that the defendant whose wrongdoing
   was for a greater time should bear the brunt of the damage
   liability.

3. JURY—OBJECTION—SIMILAR ERRONEOUS INSTRUCTIONS—APPEAL.
   Counsel's objection as to only one erroneous jury instruction,
   where two similar, erroneous instructions are given, does not
   serve as an objection to the other instruction to which there
   was no objection and the issue on the instruction that was not
   objected to is not preserved for appeal.

4. WITNESSES—EXPERT WITNESSES—QUALIFICATIONS—TRIAL COURT
   DISCRETION—ABUSE OF DISCRETION—CPA.
   The determination of whether an expert witness is qualified rests

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 76 Am Jur 2d, Trial §§ 1148, 1160–1162.
   Inconsistency of criminal verdicts as between two or more defend-
   ants tried together. 22 ALR3d 717.
[3] 75 Am Jur 2d, Trial § 906 *et seq.*
[4] 31 Am Jur 2d, Expert and Opinion Evidence §§ 26–32.
[5] 76 Am Jur 2d, Trial §§ 1166, 1167.
[6] 45 Am Jur 2d, Interference §§ 3, 4, 7–9.
[7] 17 Am Jur 2d, Contracts §§ 355, 425, 443, 446.
   45 Am Jur 2d, Interference § 27 *et seq.*
[8] 75 Am Jur 2d, Trial § 211 *et seq.*

with the sound discretion of the trial court; and there was no abuse of discretion where a CPA was allowed to testify as to arithmetically computed projections. ·

5. DAMAGES—ASSESSMENT—MATHEMATICAL PRECISION—LOST PROFITS —REASONABLE CERTAINTY—JURY DETERMINATION—RECORD.

In the assessment of damages a mathematical precision is not required in situations of injury where, from the very nature of the circumstances, precision is unattainable; it is required that the amount of profit lost be shown with such reasonable degree of certainty as the situation permits, and where the plaintiff and the defendant each show a different calculation for loss of profits it becomes a jury determination and a verdict favoring one method over the other will not be disturbed where it is supported by the record.

6. TORTS—INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP—MAL- ICE—WRONGFUL INTENT.

Intentional interference with a contractual relationship can be established without the plaintiff proving malice or wrongful intent on the part of the defendant.

7. CONTRACTS—BREACH—INDUCING BREACH OF CONTRACT—JUSTIFICA- TION—QUESTION FOR JURY.

The issue of justification for wrongfully inducing a party to a contract to make a breach thereof is a jury question.

8. APPEAL AND ERROR—PARTIES—CLOSING ARGUMENT—PENDING LAW- SUIT—CURATIVE INSTRUCTION.

One party's reference during closing argument to another pend- ing lawsuit, while arguably improper, does not mandate rever- sal where the opposing side sought and obtained a curative instruction and no motion for mistrial was made.

Appeal from Wayne, George E. Bowles, J. Sub- mitted December 5, 1975, at Detroit. (Docket No. 22573.) Decided February 10, 1976. Leave to ap- peal denied, 397 Mich —.

Complaint by National Pharmaceutical Services, Inc., against Harrison Community Hospital seek- ing damages for breach of contract, and against defendants Integrated Medical Services, Raymond Stoller, and A. W. Lapeikis seeking damages for tortious interference with a contractual relation-

ship and for trespass. Judgment for plaintiff. Defendants appeal. Affirmed.

*Lampert and Fried* (by *Charles E. Lampert, Gary E. Levitt* and *David M. Fried),* for plaintiffs.

*Hyman and Rice* (by *Abba I. Friedman* and *Laurence B. Deitch),* for defendants.

Before: J. H. GILLIS, P. J., and ALLEN and M. J. KELLY, JJ.

J. H. GILLIS, P. J. This lawsuit and appeal arose out of a contractual agreement between plaintiff, National Pharmaceutical Services, Inc. (hereinafter referred to as NPS) and defendant, Harrison Community Hospital. Plaintiff sued defendant hospital for breach of contract and sued defendants, Integrated Medical Services (hereinafter referred to as IMS), Raymond Stoller, and A. W. Lapeikis for tortious interference with a contractual relationship and for trespass. The jury found for NPS on all counts, and defendants now appeal as of right.

Plaintiff, NPS, is a Michigan corporation engaged in the wholesale and retail selling of pharmaceuticals to doctors, drug stores and hospitals. Sometime in 1969, Mr. Blustein, a corporate officer of NPS, was approached by defendant Stoller. Stoller indicated that he and some other men were interested in reopening a hospital which had gone out of business. The feasibility of this project was discussed; Blustein told Stoller that the idea appeared to be a good one. In June, 1969, Harrison Community Hospital was organized as a nonprofit corporation. This corporation leased hospital equipment, the hospital building and surrounding

land from four individuals, one of whom was defendant Stoller. The rent was $300,000 per year.

At approximately the same time that defendant hospital was incorporated, defendant IMS was also organized as a profit-making corporation. IMS was designed to furnish administrative expertise to hospitals and other medical institutions on a contractual basis. In July, 1969, IMS entered into a contract with defendant hospital, IMS agreeing to handle the hospital's administration. IMS was to receive either $60,000 a year or 5% of the hospital's annual gross receipts, whichever sum was greater. At the time of this agreement, defendant Stoller was chairman of the board of IMS as well as majority stockholder (70%). Defendant hospital was IMS's only client.

Immediately after the incorporation of IMS and the hospital, the hospital entered into a contract with plaintiff NPS. Under the terms of this agreement, the hospital was required to provide space in its building for NPS. NPS was to have the sole right to distribute pharmaceuticals and related goods within hospital premises. NPS was to pay the hospital 5% of its gross receipts. The contract was for five years, with NPS to have an option to renew for another five years.

In the normal course of operation at defendant hospital, prescriptions were brought to the plaintiff pharmacy, filled, and then dispensed to the patients. As these pharmaceuticals were dispensed by plaintiff, a billing was prepared and sent to the business office of the hospital. The hospital added its own markup to the pharmacy charges, then forwarded these bills to the patient, insurance company or governmental agency that was to pay the patient's hospital bill. Plaintiff also prepared a monthly summary of its charges for the hospital

billing office. It was to receive payment for these charges as they were submitted. In as much as the hospital was a new facility, plaintiff NPS allowed the hospital a 60-day grace period to meet its obligations.

Defendant hospital began defaulting on its obligations to NPS almost immediately. Mr. Blustein, on behalf of NPS, spoke frequently with Dr. Stoller and IMS head administrator, Mr. Lapeikis, in an attempt to rectify the situation. Blustein testified that Lapeikis told him that NPS was no longer needed in the hospital, and that he (Lapeikis) did not approve of NPS. Lapeikis refused Blustein's request that the hospital pay NPS, stating that the hospital had no money. He did admit, however, that the hospital had managed to pay all of its rent to defendant Stoller and his three partners.

When the hospital's debt to NPS reached $50,000, the hospital was put on a C.O.D. basis. Finally, in June of 1970, plaintiff's employees were locked out of the hospital, and the hospital began running its own pharmacy. In August of 1970, Mr. Lapeikis and the hospital maintenance personnel removed all of NPS merchandise from the hospital, and refused to allow any of plaintiff's employees to reenter the hospital. At the time of the eviction, the hospital owed NPS approximately $47,000.

NPS sued the hospital for breach of contract, seeking the $47,000 owed and also future profits lost because of the breach. IMS was sued for tortious interference with a contractual right. Prior to trial, a consent judgment was entered, allowing plaintiff to recover the $47,000 owed it by the hospital. The parties also agreed that IMS would assume responsibility in the event that

defendants Lapeikis and Stoller were found personally liable.

After hearing the evidence, the jury assessed $350,000 damages against defendant hospital for lost profits suffered by NPS; they assessed $150,000 damages against defendants Lapeikis and Stoller for lost profits suffered by NPS. All defendants appeal as of right.

On appeal, defendants first contend that the jury verdicts were inconsistent. They argue that plaintiffs sought only compensation for loss of future profits, that there was only one contract breached, that there was no basis for apportioning damages, and that the jury was therefore required to return the same damages award against all defendants. We disagree.

A jury verdict which is logically and legally inconsistent cannot be allowed to stand. *Booth v Bond,* 354 Mich 561; 93 NW2d 161 (1958), *Sadlowski v Meeron,* 240 Mich 306; 215 NW 422 (1927), *People v Willie Johnson,* 58 Mich App 165; 227 NW2d 272 (1975). In the instant case, however, plaintiff sued different defendants under different legal theories. Defendant hospital was sued for breach of contract, defendants Lapeikis and Stoller were sued for trespass and tortious interference with a contractual relationship. The defendants were not joint wrongdoers. Their liability need not be equal. See, *Virgilio v Hartfield,* 4 Mich App 582; 145 NW2d 367 (1966). The jury heard evidence which showed that defendants Lapeikis and Stoller were no longer associated with defendant hospital at the time of trial. Their influence over the hospital had arguably ceased. The hospital, however, was in continuous breach of a five-year contract. The jury could have logically found that the wrongful conduct of defendants Lapeikis and Stol-

ler was of a more limited duration than that of the hospital; consequently, the hospital should bear the brunt of the damage liability. There being a logical explanation for the jury verdicts, we refuse to find them inconsistent.

Defendants next contend that the trial judge erroneously instructed the jury on the issue of damages. In addressing the jury, the judge first discussed the contract claim. He explained the elements that plaintiff needed to prove, and then told the jury that they "should include as *an element of damages* any loss of profits". (Emphasis supplied.) He later defined the necessary elements of the tortious interference and trespass claims and then repeated the above instruction. Because plaintiff sued only for lost profits, defendants made the following objection:

> "Next, in both of your *tort* considerations you said that the plaintiff is entitled to damages which you find to be proximately caused including future profits and to me 'including' implies there are others and there is no claim other than future damages." (Emphasis supplied.)

The judge realized his error, and reinstructed the jury on that point. While conceding that the reinstruction was adequate as to the tort claims, defendants now claim reversal is mandated because of the "damages" instruction relating to the contract claim. Realistically, defendants do not contend that their objection to the tort instruction constituted an objection to the contract instruction; they nonetheless ask for reversal. This issue is not preserved for appeal. GCR 1963, 516.2. In the context of this case, where two similar, erroneous instructions are given, and defense counsel seeks a cure as to only one of the instructions, we find the language of *People v Brocato,* 17 Mich

App 277, 305; 169 NW2d 483, 497 (1969), most appropriate. "Counsel cannot sit back and harbor error to be used as an appellate parachute in the event of jury failure."

Defendants also appeal the trial judge's decision to let one Lyle Algate testify as an expert witness. Mr. Algate, a certified public accountant, employed by plaintiff, testified as to the probable future profits lost by plaintiff as the result of defendants' conduct. Mr. Algate's calculations were based on NPS profits for the eight-month period that NPS was in full operation at the hospital. Algate had no experience in the pharmaceutical field.

Defendants contend that Algate should not have been allowed to testify as an expert. The determination of whether an expert witness is qualified to testify rests within the sound discretion of the trial court. This Court interferes only to correct an abuse of discretion. *Coger v Mackinaw Products Co,* 48 Mich App 113; 210 NW2d 124 (1973). There was no abuse of discretion in allowing a CPA to testify as to arithmetically computed projections.

The real gist of defendants' argument, however, seems to be that plaintiff should not have been able to prove loss of future profits over a five-year period by pointing to profits made in the first eight months. We think that Michigan law allows such a procedure, and that it was proper to do so in this instance. See, *Rich v Daily Creamery Co, 303 Mich 344; 6 NW2d 539 (1942), Stimac v Wissman,* 342 Mich 20; 69 NW2d 151 (1955), *Gongola v Yaksich,* 3 Mich App 676; 143 NW2d 601 (1966). In *Stimac, supra,* 28; 69 NW2d 151, 155, our Supreme Court noted that:

"We do not, however, in the assessment of damages, require a mathematical precision in situations of injury where, from the very nature of the circumstances,

precision is unattainable. We do require that the amount of profit lost be shown with such reasonable degree of certainty as the situation permits. We are of the opinion that it was so here shown, being based upon profits realized during a like period for the preceding year."

The fact that defendants' expert witness testified that Algate's calculations were inaccurate is relevant only insofar as it presented the jury with two different methods of computing lost profits. The jury made its decision, there is support for it in the record.

Defendants' contention that insufficient evidence was introduced to establish intentional interference with a contractual relationship is meritless under the holding of *Dassance v Nienhuis,* 57 Mich App 422; 225 NW2d 789 (1975). The issue of justification for the breach is a jury question. *Wilkinson v Powe,* 300 Mich 275; 1 NW2d 539 (1942).

The jury instruction regarding intentional interference with a contractual relationship was not objected to. The issue is not preserved. GCR 1963, 516.2.

Plaintiff's reference to another pending lawsuit during closing argument, while arguably improper, does not mandate reversal. A curative instruction was sought and obtained. No motion for a mistrial was made. Under the holding of *Koepel v St Joseph Hospital,* 381 Mich 440, 443; 163 NW2d 222 (1968), reversal is not necessary.

Affirmed. Costs to appellee.