GONGOLA *v.* YAKSICH.

1. APPEAL AND ERROR—FINDING OF FACT—CONTRACTS—EVIDENCE.
     A finding of fact by the trial court in a nonjury case that a
     good and valid contract had been executed is binding upon the
     Court of Appeals, where there is testimony to support the
     finding.

2. CONTRACTS—OFFER—REVOCATION BY COUNTEROFFER.
     A contract, unlike an offer, is not subject to revocation by a
     counteroffer.

3. SAME—OFFER AND ACCEPTANCE.
     A contract is entered into when an offer has been made by one
     and accepted by another.

4. SAME—OFFER TO PURCHASE BUSINESS.
     Written offer by plaintiff to purchase a tavern business from
     defendant became a valid, enforceable contract when signed
     and accepted by defendant.

5. SAME—OFFER AND ACCEPTANCE—PURCHASE AGREEMENT—VARI-
   ANCE.
     Defendant's refusal to perform executed contract to sell tavern
     business because the purchase agreement contemplated by the
     accepted offer to purchase, as presented by purchaser, differed
     in some respects from the executed contract *held*, not justi-
     fied, where inclusion of plaintiff's partner as a purchaser, and
     lease for 10 years rather than 5 years with a 5-year renewal
     option did not change the substantive terms of the contract,
     such differences actually benefiting the seller.

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 839.
[2] 17 Am Jur 2d, Contracts §§ 39–41.
[3] 17 Am Jur 2d, Contracts §§ 31, 41.
[4] 17 Am Jur 2d, Contracts § 41 *et seq.*
[5] 17 Am Jur 2d, Contracts § 62 *et seq.*
[6–8] 22 Am Jur 2d, Damages § 46 *et seq.*

6. DAMAGES—EVIDENCE.
   Mathematical precision as to damages is not required in situations
   of injury, where the very nature of the circumstances makes
   precision unattainable.

7. SAME—BREACH OF CONTRACT.
   The award of damages for breach of contract is to provide the
   equivalent of performance of the bargain so as to place the
   plaintiff in the position he would have been in if the contract
   had been fulfilled.

8. SAME—BREACH OF CONTRACT—TAVERNS.
   Method utilized by trial court in assessing damages against de-
   fendant in suit for breach of contract to convey a tavern busi-
   ness where trial court in its award attempted to confer upon
   plaintiff the benefits contemplated by both parties when the
   contract was made, which had been denied plaintiff as a con-
   sequence of defendant's breach *held*, proper and reasonable.

Appeal from Wayne; Wise (John M.), J. Sub-
mitted Division 1 February 8, 1966, at Detroit.
(Docket No. 408.)  Decided July 12, 1966.

Complaint by Louis Gongola against Mary F.
Yaksich for damages caused by a breach of a con-
tract to convey a tavern business. Judgment for
plaintiff. Defendant appeals. Affirmed.

*Levine & Benjamin (Alvin L. Levine,* of counsel),
for plaintiff.

*Goodman, Crockett, Eden, Robb & Philo (Marijana
Relich,* of counsel), for defendant.

J. H. GILLIS, J. Although the late Judge WATTS
heard oral arguments on the above matter, he took
no part in the decision in this case.

This is an action for breach of contract and from
an adverse decision the defendant, Mary Yaksich,
appeals. In February of 1963 the defendant was
the owner of the liquor emporium known as the

Dipsey Doodle Bar. During said month and year Mrs. Yaksich notified a friend, who was a liquor salesman and part-time salesman for a realty company, that she was interested in selling her bar business for $80,000 net. This friend informed an associate salesman at the realty company of defendant's desire to sell and eventually the broker presented her with an offer to purchase signed by the plaintiff, Louis Gongola, which called for a total sale price of $88,000 with an $8,000 commission. The offer to purchase set forth the method and manner of payment and a clause which conditioned the offer upon "securing a five-year lease with a five-year renewal option at a monthly rental of $400." The defendant was the owner of the building wherein the Dipsey Doodle was located. The offer to purchase acknowledged the receipt of a $1,000 deposit from the plaintiff and further provided that if the owner refused to go through with the transaction, she would be liable to the broker for the full commission of $8,000 as liquidated damages. The offer was dated Friday, February 22, 1963, and was signed by the plaintiff and defendant and witnessed.

The following Sunday, the broker and the defendant met at the Dipsey Doodle, which was normally closed on Sunday, and conducted an inventory. The next day the formal purchase agreement was presented to the defendant and she refused to sign, contending that it had been changed in three respects; a new purchaser was added in addition to the plaintiff; instead of a five-year lease with a five-year option to renew, the agreement provided for a ten-year lease; and a provision for liquidated damages set forth the sum of $5,000 instead of $8,000. When the defendant refused to sign the agreement, the plaintiff offered an additional amount of $3,000 on the purchase price. Plaintiff contends that defendant told him that she wouldn't consummate the deal

because she thought the broker's commission was excessive and wanted to limit it to $3,000. When the plaintiff was unable to consummate the purchase of the Dipsey Doodle, he purchased the Big Daddy Bar which was located within three blocks of the Dipsey Doodle.

This Court must determine if there is valid reason for defendant's refusal to perform the offer to purchase by executing the purchase agreement and if not, whether the damages of $3,000 awarded by the trial court were excessive.

Defendant testified that she signed the initial offer to purchase on Sunday, February 24, 1963, but there is testimony in the record which contradicts this and the instrument is dated February 22, 1963, a Friday. No affirmative defense was set forth in the original pleadings alleging a Sunday contract. The trial court made a finding of fact "that there was a good and valid contract," and such determination is binding upon this Court.

The defendant further alleges that the purchase agreement presented on Monday, February 25, 1963, operated as a revocation of the prior offer. However, this contention cannot be sustained because, as the defendant's counsel admitted, the instrument signed on February 22, 1963, constituted a valid contract. A contract, unlike an offer, is not subject to revocation by a counteroffer. The signing of the instrument by the defendant was an acceptance of the plaintiff's offer and at this point a valid, enforceable contract existed.

"When an offer has been made by one and accepted by the other, a contract is thereby entered into." *Pangburn* v. *Sifford* (1921), 216 Mich 153, 154.

Although the purchase agreement differed in some respects from the executed contract, *i.e.*, the plaintiff's partner was included as a purchaser and the

lease was for ten years rather than five years with
a five-year renewal option,* these differences actu-
ally benefited the seller, did not change the substan-
tive terms of the contract, and present no valid rea-
son for her refusal to perform.

In determining damages, the trial court was sub-
jected to a multitude of conflicting testimony by the
defendant as to the gross and net earnings of the
bar. Ultimately the defendant testified that her
slowest month's gross was $4,500 and the highest
was between $6,500 and $6,800. Plaintiff testified
that prior to signing the agreement he examined the
books and the slowest month was $6,900 and the
highest was $10,000. At no time were the sales tax
receipts brought into court by the defendant.

Subsequent to this testimony, the defendant set
the weekly earnings of the bar at $250. The trial
court multiplied this figure by the number of weeks
(9) the plaintiff was without a bar because of this
breach. The resulting figure of $2,250 was based
solely upon the defendant's testimony and this Court
feels that there was no error in raising this figure to
a more realistic $3,000 in view of plaintiff's testi-
mony. When testimony such as given in this case
makes the exact ascertainment of damages impos-
sible the Michigan Supreme Court has said:

"We do not, * * * in the assessment of dam-
ages, require a mathematical precision in situations
of injury where, from the very nature of the circum-
stances, precision is unattainable." *Stimac* v. *Wiss-
man* (1955), 342 Mich 20, 28.

The object of awarding damages in cases of breach
of contract is to award a sum "which is the equivalent
of performance of the bargain * * * to place the
plaintiff in the position he would be in if the contract

---

* The reduction of liquidated damages was not raised on appeal
as constituting a change in the substantive terms of the contract.

had been fulfilled." McCormick, Damages, § 137, p 561. The trial court in its award has attempted to confer upon the plaintiff the benefits contemplated by both parties when the contract was made, which have been denied the plaintiff as a consequence of defendant's breach. The method utilized by the trial court in assessing damages was proper and reasonable.

Judgment affirmed. Costs to appellee.

FITZGERALD, J., concurred.