DETROIT BANK & TRUST COMPANY v·COOPES

Docket No. 78-4841. Submitted June 19, 1979, at Detroit.—Decided
November 6, 1979. Leave to appeal applied for.

Detroit Bank & Trust Company and Bennett L. Nathan are the
co-executors of the estate of George G. Mantho, a deceased
attorney. They entered into an agreement with Robert L.
Coopes under which Coopes was to purchase the law practice of
Mantho. A portion of the agreement provided that Coopes was
to pay to the estate 20 percent of "all funds received by him
pursuant to retainers presently on the books" for a period of
four years. Less than a year later, Coopes ceased making
further payments to the estate, claiming that all of the dece-
dent's work had been completed and the retainers ended. The
executors brought an action to recover amounts they claim are
still due to the estate. The Oakland Circuit Court, William J.
Beer, J., held that the contract was valid in its entirety and
awarded plaintiffs 20 percent of an amount representing fees
and reimbursed expenses from any client for which the de-
ceased had ever opened a file. The defendant appeals. *Held:*

1. The contract was valid. There was no transfer of good will,
which would have invalidated the agreement under the Code of
Professional Responsibility. The formula worked out by the
parties was a reasonable method of compensating the estate for
past services rendered by the deceased, under the facts of this
case.

2. The defendant offered parol evidence to show that the
contract was ambiguous as to the meaning of "retainers on the
books" and "funds". The trial court excluded the proffered
parol evidence. The defendant's proposed meanings of the
terms were not inconsistent with the written contract lan-
guage, and the parol evidence was admissible.

3. "Retainers on the books" means oral or written retainer
contracts existing at the time the contract was signed.

4. "Funds" includes fees and only that portion of reimbursed

REFERENCES FOR POINTS IN HEADNOTES
[1] 7 Am Jur 2d, Attorneys at Law § 225.
[2] 17 Am Jur 2d, Contracts § 77.
[3] 17 Am Jur 2d, Contracts § 254.

expenses which constitutes contribution to fixed overhead expenses.

Remanded.

1. ATTORNEY AND CLIENT — DISCIPLINARY RULES — DECEASED ATTORNEY — COMPENSATION OF ESTATE — GOOD WILL.

A lawyer who undertakes to complete unfinished legal business of a deceased lawyer may pay to the estate of the deceased lawyer that proportion of the total compensation which fairly represents the services rendered by the deceased lawyer; however, the estate is not entitled to any good will generated by the law practice (Code of Professional Responsibility and Canons, Canon 3, DR 3-102[A][2]).

2. EVIDENCE — CONTRACTS — PAROL EVIDENCE — ADMISSIBILITY.

The test for admissibility of parol evidence in a contract dispute is whether the proffered parol evidence is inconsistent with the written language of the contract; if not, the parol evidence is admissible.

3. CONTRACTS — CONSTRUCTION — ILLEGAL CONTRACTS.

A contract will not be construed so as to make it illegal if such a construction can be reasonably avoided.

*Watson & Wunsch, P.C.,* for plaintiffs.

*McInally, Brucker, Newcombe, Wilke & DeBona, P.C.* (by *Wilber M. Brucker, Jr.,* and *Wayne G. Wegner),* for defendant.

Before: BASHARA, P.J., and R. M. MAHER and J. C. DANER,* JJ.

BASHARA, P.J. Defendant appeals from a judgment in favor of plaintiffs, the co-executors of the estate of George Mantho, deceased. The defendant, an attorney, and the co-executors entered into an agreement to purchase the law practice of the decedent.

The only disputed area of the contract is that

---

* Circuit judge, sitting on the Court of Appeals by assignment.

portion intended to compensate decedent's estate for services rendered but not billed at the time of his death. The applicable section provides, in pertinent part:

"ROBERT L. COOPES does agree to pay * * * to the Corporation an amount equal to Twenty (20%) percent of all funds received by him pursuant to the retainers presently on the books of LAW OFFICES GEORGE GREGORY MANTHO PROFESSIONAL CORPORATION and this payment shall continue for a period of four (4) years from the date hereof. Additionally, this shall include those retainers which have not been specifically cancelled." (Emphasis in original.)

The above formula was developed because the decedent specialized in labor negotiation, with the bulk of his practice on a written or oral retainer.

There was a general failure to keep basic time records of work performed. Consequently, there appeared to be little correlation between monthly retainer billings and the work actually performed.

Before the contract was finalized, counsel for the State Bar Grievance Board was consulted. While he made it clear that his advice did not constitute the official position of the Grievance Board, his suggestion that the parties use the word "retainers" rather than the word "clients" was adopted. The reasoning of counsel was that under the Code of Professional Responsibility, an attorney's fiduciary relationship with a client could not be sold.

The contract was signed by the parties on August 15, 1973, and defendant commenced work at decedent's office on September 1, 1973. The defendant discontinued making payments to the estate in May of 1974, well before the specified four-year period. He claimed that all decedent's work had been completed and retainers ended. He acknowl-

edged that 20% of $77,283.34, or $15,456.67, was still due to the estate.

The trial judge, in a thorough and well written opinion, held the contract valid in its entirety, and awarded plaintiffs 20% of $641,458.32, or $128.291.66. In arriving at the gross figure, the court included reimbursed expenses as well as fees.

During the course of the proceedings, the trial court did not allow defendant to introduce parol evidence. However, the learned trial judge allowed a special record of the proffered evidence to be kept for purposes of review.

Three questions are presented for resolution, and will be dealt with *seriatim.*

I

*Was the "Work Completed" section of the contract valid in light of the Code of Professional Responsibility?*

The interpretation of DR 3-102(A)(2) of the Code of Professional Responsibility is one of first impression. The applicable portion of that section provides:

"(A) a lawyer or law firm shall not share legal fees with a non-lawyer, except that * * * (2) A lawyer who undertakes to complete unfinished legal business of a deceased lawyer may pay to the estate of the deceased lawyer that proportion of the total compensation which fairly represents the services rendered by the deceased lawyer."

The negative corollary to DR 3-102(A)(2) is that the estate is not entitled to any good will generated by the law practice. Good will is here defined as the value assigned to the expectation of future

business. Presumably, the transfer of good will would result in higher fees being charged to clients in order to compensate the attorney for his purchase of that commodity. The prohibition of the sale of good will also prevents the estate from selling the law practice to the highest bidder.[1]

The validity of the contract under DR 3-102(A)(2) depends on whether there was an attempted transfer of good will by the estate. We hold that there was no transfer of good will.

Because the decedent did not keep time records of his work performed, the parties had no alternative but to estimate the value of his services. Defendant, who proposed the contract, agreed to pay 20% of retainers on the books over a four-year period. There is nothing in the record to indicate that this was not a reasonable method of compensating the estate. Indeed, as evidenced by their meeting with counsel for the Grievance Board, the parties appeared to be extremely sensitive to the ethical considerations involved.

Defendant argues that all work undertaken by decedent had been completed by May 1974, and that all retainers had ended. Defendant contends that to give the estate 20% of retainers which he renewed would violate DR 3-102(A)(2).

Allowing the estate 20% of renewed retainers does not violate DR 3-102(A)(2) because the formula was merely a way of compensating the estate for *past services* performed by decedent. It is rea-

---

[1] Two other disciplinary rules in addition to DR 3-102(A)(2) would seem to adopt a policy against the transfer of good will. DR 4-101 (Confidences and Secrets), and DR 2-103 (Prohibition of Solicitation). See Pirsig and Kirwin, Professional Responsibility (3d ed), p 176 (1976).

For an excellent discussion of the ethical considerations associated with the sale of a law firm, see generally Sterrett, *The Sale of a Law Practice,* 121 U Pa L Rev 306 (1972); Note, *The Death of a Lawyer,* 56 Colum L Rev 606 (1956).

sonable to assume that amounts collected by defendant from September 1, 1973, to May 1974 on retainers executed by the decedent represented more than compensation to the defendant for work performed. Paying the estate over a four-year period represented a form of installment payments. The rule of construction that a contract will be strictly construed against the drafter needs no citation.

In holding that the above agreement does not violate DR 3-102(A)(2), we do not impose a general rule. Courts faced with similar agreements must analyze them on a case-by-case basis and construe them in light of the broad policy against the transfer of good will.

## II

*Did the trial judge properly exclude the parol evidence offered by the defendant?*

Our examination of the record indicates that the evidence should have been admitted. The test for its admissibility in Michigan "is whether the proffered parol evidence is inconsistent with the written language", *Union Oil Co of California v Newton,* 397 Mich 486, 488; 245 NW2d 11 (1976), *NAG Enterprises, Inc v All State Industries, Inc,* 85 Mich App 194, 199; 270 NW2d 738 (1978).

Defendant offered the parol evidence to show that the work completed section was ambiguous with regard to the meaning of "retainers on the books" and "funds". Defendant claimed that "retainers on the books" meant retainers for which either a written or oral agreement had been reached with clients. Defendant claimed that "funds" did not include reimbursed expenses. Nei-

ther of defendant's proposals is inconsistent with the written contract language.

The trial judge concluded that "retainers on the books" meant clients for whom decedent had ever opened a file. Black's Law Dictionary (4th ed), p 1479, defines "retainer" as the "Act of the client in employing his attorney or counsel, and also denotes the fee which the client pays when he retains the attorney to act for him, and thereby prevents him from acting for his adversary". (Citations omitted.) The definition of "retainer" as found in Black's Law Dictionary is clearly more restrictive than the definition applied by the trial court. Of course, the parties could themselves agree to a liberal definition of the word "retainer", and there is evidence in the record that they did agree to a different definition, since the original draft of the agreement used the word "clients" instead of "retainers". Indeed, the parties employed the word "retainers" at the suggestion of Grievance Board counsel to avoid ethical improprieties. However, in order for the word "retainer" to encompass "clients", the trial judge would have to use parol evidence to take into account the preformation draft and discussions.

With respect to the use of the word "funds", the defendant's claim that "funds" does not include reimbursed expenses is not inconsistent and parol evidence was admissible for clarification.

## III

*Did the trial judge properly interpret the contract?*

Defendant claims that the trial judge erred in interpreting the phrase "retainers currently on the books" as encompassing any client for which

the Mantho office had ever opened a file. We agree. In making this determination, we are guided by the rule of construction that a contract will not be construed so as to make it illegal if such construction can be reasonably avoided. *Millen v Potter,* 190 Mich 262, 273; 157 NW 101 (1916). The parties specifically changed the word "clients" in the initial contract draft to the word "retainers". If defendant had purchased "clients", there is a high likelihood that the contract would be void as against public policy.

"Clients are not merchandise. Lawyers are not tradesmen. They have nothing to sell but personal service. An attempt therefore, to barter in clients, would appear to be inconsistent with the best concepts of our professional status." Committee on Professional Ethics of the New York County Lawyers' Association, Opinion 109 (1943).

We hold in accordance with the plain meaning of the contract that "retainers on the books" means oral or written retainer contracts existing as of the time the contract was signed.

The contract also provided for payment by the defendant of 20% of all "funds" received by him pursuant to retainers. The trial court held that "funds" includes reimbursed expenses. The question is significant because one of decedent's retainer clients, National Steel Carriers Association, had reimbursed costs over the four-year period of $184,562.37. The National Steel Carriers' contract was unique in that the reimbursed expenses, pursuant to a special billing arrangement, included amounts for fixed overhead of the Mantho office. Ordinarily, reimbursed expenses are for variable or out-of-pocket expenses such as filing fees and travel expenses. The record indicates that the

special billing arrangement for the National Steel Carriers was made because of the relatively large sums involved in the retainer contract. When the contract was originally negotiated with the Mantho office, the parties felt that the cost would be more palatable if amounts for fixed overhead were billed as reimbursed expenses.

Because there was testimony on both sides of this issue, we would ordinarily not attempt to modify the sound discretion of the trial judge. However, as previously stated, we must at all times construe the agreement so as not to violate the policy against the transfer of good will.

DR 3-102(A)(2) entitles the estate of the deceased to be compensated for "work performed" by the deceased. There is too tenuous a relationship between work performed and out-of-pocket reimbursed expenses. Out-of-pocket expenses of the defendant can in no way be considered work performed by decedent. The estate acknowledges this but argues, as they did with renewal retainer agreements, that the reimbursements are merely installment payments for decedent's past services. We cannot agree.

Payments on retainer contracts over the four-year period were expressly required by the sales agreement. Reimbursed expenses are not expressly called for by the contract. We cannot apply the rule of construction that requires ambiguous contracts to be construed against the drafter where such construction runs against the policy of a disciplinary rule.

We have distinguished out-of-pocket reimbursed expenses from other reimbursed expenses, specifically the reimbursed expenses of the National Steel Carriers' contract and any other contracts billed in a similar manner. This distinction is

based on the fact that virtually all attorney fees constitute a partial reimbursement of expenses to the extent they contribute to fixed overhead. Fixed overhead includes such items as employee wages, rent, equipment rental, etc.

Under the present contract, we conclude that plaintiffs are entitled to 20% of all fees collected on retainer contracts, plus any reimbursed expenses which constitute contributions to fixed overhead.

We remand to the trial court for proceedings consistent with this opinion.