JOERGER v GORDON FOOD SERVICE, INC

Docket Nos. 185574, 187495. Submitted April 1, 1997, at Grand Rapids. Decided June 13, 1997, at 9:05 A.M.

Douglas J. Joerger (hereinafter Joerger) and Doug Joerger Enterprises, Inc., doing business as Parents' Pantry, brought an action in the Kent Circuit Court against Gordon Food Service, Inc., alleging breach of an oral contract, innocent misrepresentation, and promissory estoppel. Joerger had developed a business concept whereby grocery items would be sold at or below the retail price by church and school organizations as a fundraising activity, with those organizations being paid a percentage of the sales they made as a commission. Joerger entered into an oral contract with the defendant whereby the defendant would supply and deliver the grocery items that had been sold by the organizations that had enlisted in the plan. During the six months that the plan was in operation there were various problems with the delivery of the groceries to the subscribing organizations. After four months of operation, the defendant notified Joerger that it intended to terminate the arrangement two months later. The court, Dennis C. Kolenda, J., granted summary disposition for the defendant with respect to the claim of innocent misrepresentation. The remaining claims went to mediation, which resulted in an evaluation in favor of the plaintiffs that the defendant accepted and the plaintiffs rejected. Following a jury trial, the court directed a verdict for the defendant with respect to the claim of breach of the oral contract, and the jury returned a verdict for the plaintiffs with respect to the claim of innocent misrepresentation but made no damage award. The court denied the plaintiffs' motion for additur or for a new trial with respect to damages and entered a judgment on the jury's verdict. Thereafter, the court granted the defendant's motion for mediation sanctions and entered a judgment ordering the plaintiffs to pay to the defendant certain attorney fees and court costs. The plaintiffs appealed separately the underlying judgment on the jury verdict and the order awarding mediation sanctions, and the appeals were consolidated.

The Court of Appeals held:

1. The trial court did not err in denying the motion for additur. The evidence of damages was scant, and there was overwhelming

evidence that the plaintiffs failed to mitigate. The jury's finding of liability on the defendant's part was consistent with the jury's failure to award damages, because before damages can be awarded, they must be proved. Here the jury could properly find that damages had not been proved even if liability had been established.

2. The trial court's instructions, when read as a whole, adequately and fairly presented to the jury the appropriate measure of damages with respect to a claim for innocent misrepresentation.

3. The trial court did not abuse its discretion in excluding from the trial Joerger's proposed testimony concerning his projection of the plaintiffs' lost profits on the basis that Joerger's proposed testimony lacked an adequate foundation and amounted to impermissible speculation. Not only was there no adequate history of profits by the business operation at issue, but Joerger's profit projections assumed a number of client organizations and monthly sales to each such client that significantly exceeded the actual number of clients and sales actually reached during the operation of the business.

4. The trial court did not err in finding for the purpose of the awarding of mediation sanctions that the number of hours of attorney time billed by the defendant was reasonable under the circumstances.

5. The defendant billed, and the trial court allowed, as a separate chargeable mediation sanction the cost of paralegals who were employed by the defense counsel. By both court rule, MCR 2.403(O)(6), and statute, MCL 600.2405; MSA 27A.2405, mediation sanctions include the awarding of reasonable attorney fees. Although there is no provision in either the court rule or the statute for an independent award of the costs associated with the services provided to an attorney by paralegals, the cost of such services, as with the costs associated with the services of other individuals in the operation of a law office, may be considered by a court in determining the reasonableness of the attorney fees sought. Thus, in the absence of either the Supreme Court or the Legislature specifically authorizing an independent award for services provided by paralegals, the costs associated with the use of the services of paralegals by an attorney are deemed to be incorporated into the rate structure of the fees awarded for the services of attorneys, and, thus, those costs may not be separately billed and awarded. Accordingly, this case must be remanded to the trial court so that the award of attorney fees may be reduced by the amount attributable to the independent paralegal billings.

Affirmed in part, reversed in part, and remanded.

TAYLOR, P.J., concurring in part and dissenting in part, stated that the award of mediation sanctions, including the independent award for paralegal services, should be affirmed, because the recovery of the costs associated with the services rendered by a paralegal on behalf of legal counsel should not turn on the manner in which those costs are billed to a client and that neither the court rule nor the statute requires that those costs be hidden in the fiction that they are incorporated in the rate structure that forms the award for services rendered by an attorney.

COSTS — MEDIATION SANCTIONS — ATTORNEY FEES — PARALEGALS.

There is no provision in either the court rule or the statute relating to mediation sanctions for an independent award of the costs of the services rendered to an attorney by paralegals; however, the costs of the services rendered by paralegals, as with the costs associated with services of other individuals in the operation of a law office, may be considered by a court in determining the reasonableness of the attorney fees being sought (MCL 600.2405; MSA 27A.2405; MCR 2.403[O][6]).

*Schenk, Boncher & Prasher* (by *Gregory G. Prasher*), for the plaintiff.

*Miller, Johnson, Snell & Cummiskey, P.C.* (by *David J. Gass* and *James R. Peterson*), for the defendant.

Before: TAYLOR, P.J., and HOOD and GRIBBS, JJ.

HOOD, J. Plaintiffs appeal as of right from the judgment entered in their favor following a jury trial and from the order awarding defendant mediation sanctions. We affirm in part, reverse in part, and remand.

Plaintiff Douglas J. Joerger (hereinafter Joerger) worked as a controller for Schwinn Bicycle Company during 1989 and 1990, and earned an annual salary of $55,000. He also received a benefits package valued at $4,500. During that time, Joerger developed a business concept that he named "Parents' Pantry." Parents' Pantry involved the sale of grocery items once a month at or below retail prices through schools and

churches with a ten percent commission being returned to the schools or churches. Joerger's role in the operation of Parents' Pantry would be limited to sales, marketing, and administrative activities. Joerger chose Michigan and northern Indiana as the market for this product-based fundraising business.

Joerger approached defendant about supplying the products and distribution services needed for the company. Defendant is the largest independent food distributor in the United States with $1,000,000,000 in annual sales. Defendant's headquarters are in Grand Rapids. Defendant's customer base consists primarily of restaurants, hospitals, nursing homes, schools, government agencies, and prisons located in Michigan, Ohio, Indiana, and Illinois.

Joerger and a business friend, Morris Bilskie, met with Ronald Miller, defendant's director of marketing. At that meeting, Joerger explained the purpose and operation of Parents' Pantry and projected annual sales of $100,000,000 within five years of operation. Joerger gave Miller a presentation package to show to other executives of defendant.

Joerger and Bilskie had a second meeting with Miller, Patrick Cady, the assistant marketing manager for defendant, and David Dow, a sales manager for defendant. Joerger testified that at the end of the meeting, Miller indicated that defendant would sell products to Parents' Pantry and deliver the products to Parents' Pantry's clients. The agreement was not in writing, because, according to the testimony, defendant does business on a "handshake" basis.

By September 1991, the date Parents' Pantry placed its first order with defendant, Joerger had met with Cady and others to finalize issues concerning product

selection, package size, and delivery dates and times. Joerger had also secured nine accounts and quit his job. By November 1991, Joerger added five additional accounts. During the period from September 1991 through January 1992, Parents' Pantry had problems securing timely deliveries of the products ordered, and it received shipments that contained product shortages. Upon Cady's suggestion, Joerger ceased seeking any further accounts until certain problems with the delivery process were resolved.

In late January 1992, Cady informed Joerger that at the end of March 1992 defendant would no longer supply Parents' Pantry. As a result, Joerger ceased conducting business as Parents' Pantry in early March 1992. The only month Parents' Pantry made a profit was November 1991.

Plaintiffs sued defendant, alleging breach of the oral contract, innocent misrepresentation, and promissory estoppel. The trial court granted defendant's motion for summary disposition with respect to plaintiffs' innocent misrepresentation claim, and directed a verdict against plaintiffs with respect to their breach of the oral contract claim. No appeal has been taken from these rulings. Following trial, the jury returned a verdict for plaintiffs, but made no damage award. The trial court denied plaintiffs' motion for additur or, in the alternative, for a new trial with respect to damages, finding that the verdict was justified. The trial court also granted defendant's motion for mediation sanctions of $131,540 in attorney fees and $7,348.95 in costs.

I

Plaintiffs argue that the trial court erred in denying their motion for additur or, in the alternative, for a new trial with respect to damages. We are not compelled to review this issue because it is not identified in plaintiffs' statement of questions presented as required by MCR 7.212(C)(5). *Lansing v Hartstuff*, 213 Mich App 338, 351; 539 NW2d 781 (1995). For the same reason, we are not compelled to review plaintiffs' argument that the jury's verdict was inconsistent because a finding of liability requires an award of damages. *Id.* In any event, we conclude that neither issue has merit.

This Court accords due deference to a trial court's decision regarding the grant or denial of additur and reverses a trial court's decision only if an abuse of discretion is shown. *Arnold v Darczy*, 208 Mich App 638, 639; 528 NW2d 199 (1995). Likewise, trial courts have discretion in granting a new trial, and appellate courts will not interfere absent a palpable abuse of discretion. *Id.* The proper consideration in granting or denying additur is whether the jury award is supported by the evidence. *Flones v Dalman*, 199 Mich App 396, 406; 502 NW2d 725 (1993). The record supports the trial court's conclusion that in this case damages were controverted. The evidence demonstrated that plaintiffs' testimony regarding damages was scant and that plaintiffs failed to rebut the overwhelming testimony concerning plaintiffs' failure to mitigate. The jury was free to accept or reject plaintiffs' testimony regarding their damages. *Id.* We conclude that the trial court did not abuse its discretion in denying plaintiffs' posttrial motions.

In addition, there is no merit to plaintiffs' assertion that the verdict was inconsistent. There is no legal requirement that a jury award damages simply because liability was found. Indeed, before damages can be awarded, they must be proved. Again, plaintiffs failed to prove their alleged damages or rebut the substantial testimony regarding mitigation.

II

Plaintiffs also argue that the trial court improperly instructed the jury concerning the proper measure of damages in a claim of promissory estoppel. We review this issue for an abuse of discretion. *Bordeaux v Celotex Corp*, 203 Mich App 158, 168-169; 511 NW2d 899 (1993). Jury instructions are reviewed by this Court in their entirety and should not be extracted piecemeal. *Id.* at 169. Reversal is not required if, on balance, the theories of the parties and the applicable law are adequately and fairly presented to the jury. *Id.*

Promissory estoppel was the only claim submitted to the jury. The elements of promissory estoppel are: (1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, (3) which in fact produced reliance or forbearance of that nature, and (4) in circumstances such that the promise must be enforced if injustice is to be avoided. *Meerman v Murco, Inc*, 205 Mich App 610, 616; 517 NW2d 832 (1994).

In a promissory estoppel action, the " 'remedy granted for breach may be limited as justice requires.' " *State Bank of Standish v Curry*, 442 Mich 76, 83; 500 NW2d 104 (1993), quoting 1 Restatement Contracts, 2d, § 90, p 242. The guiding principle in

determining an appropriate measure of damages is to ensure that the promisee is compensated for the loss suffered to the extent of the promisee's reliance. *Cyberchron Corp v Calladata Systems Development, Inc*, 47 F3d 39, 46 (CA 2, 1995); *Mahoney v Delaware McDonald's Corp*, 770 F2d 123, 127-128 (CA 8, 1985). Damages awarded in promissory estoppel actions may include an award of lost profits, Calamari & Perillo, The Law of Contracts (3d ed), § 6.6, p 291, and out-of-pocket expenses incurred in preparation for performance or in the performing of the work that was induced by the promisor, *Cyberchron, supra*; *Mahoney, supra*.

We have reviewed the instructions in their entirety and find that the appropriate measure of damages was adequately and fairly presented to the jury. Plaintiffs made specific requests for damages, and the instructions were broad enough to cover every dollar amount sought by plaintiffs had the jury found their damage request credible and supported by the evidence. Indeed, the court's instruction that the jury was to measure damages by ascertaining "what, if anything, plaintiffs lost by relying on the commitments [of defendant]" unambiguously conveyed to the jury the guiding principle in determining an appropriate measure of damages—to ensure the promisee is compensated for the loss suffered to the extent of the promisee's reliance. We therefore conclude that, given the specificity of plaintiffs' damage request to the jury and the generality of the court's damage instruction, plaintiffs' argument is without merit.

III

Plaintiffs also challenge the trial court's decision to preclude Joerger from testifying regarding Parents' Pantry's lost profits. We disagree. The qualification of a witness as an expert and the admissibility of the expert's testimony are within the trial court's discretion. *Mulholland v DEC Int'l Corp*, 432 Mich 395, 402; 443 NW2d 340 (1989); *Dean v Tucker*, 205 Mich App 547, 550; 517 NW2d 835 (1994).

The trial court on the basis of MRE 703 and 403, granted defendant's motion in limine to exclude Joerger's proposed expert testimony concerning his projection of lost profits after making extensive findings. In essence, the trial court concluded that Joerger's testimony regarding plaintiffs' damage claim lacked an adequate foundation and amounted to impermissible "rank speculation."

We initially note that for most of the arguments presented in this issue plaintiffs failed to address the basis of the trial court's decision. This Court, therefore, need not even consider granting plaintiffs the relief they seek. See *Roberts & Son Contracting, Inc v North Oakland Development Corp*, 163 Mich App 109, 113; 413 NW2d 744 (1987). We nevertheless address the propriety of the trial court's ruling.

In order to recover prospective profits, a plaintiff must establish proof of lost profits with a reasonable degree of certainty. *Fera v Village Plaza, Inc*, 396 Mich 639, 643; 242 NW2d 372 (1976), citing 5 Corbin on Contracts, § 1020, p 124; *Nat'l Pharmaceutical Services, Inc v Harrison Community Hosp*, 67 Mich App 286, 293-294; 241 NW2d 76 (1976). Where the proof is available, prospective profits may be recovered, when proved, as other damages. Nevertheless,

as in all cases, " '[t]he jury should not be allowed to speculate or guess [with regard to] the amount of loss of profits.' " *Fera, supra* at 643, quoting *Kezeli v River Rouge Lodge, IOOF*, 195 Mich 181, 188; 161 NW 838 (1917).

In examining a new business versus an interrupted business, the Supreme Court has indicated that " '[i]f the business . . . has not had such a history as to make it possible to prove with reasonable accuracy what its profits have been in fact, the profits prevented are often but not necessarily too uncertain for recovery.' " *Fera, supra* at 645, quoting 5 Corbin on Contracts, § 1023, pp 150-151. Several cases have allowed a party to prove loss of future profits by pointing to profits made in previous months or years. See, e.g., *Stimac v Wissman*, 342 Mich 20, 28; 69 NW2d 151 (1955); *Nat'l Pharmaceutical Services, supra* at 293; *Gongola v Yaksich*, 3 Mich App 676; 143 NW2d 601 (1966). The instant case, however, is easily distinguishable.

Here, the trial court correctly determined that the data generated by Parents' Pantry was too scant to support Joerger's proposed lost profits testimony. Parents' Pantry operated for six months, but earned no overall profits. Profitability was limited solely to the month of November 1991. Furthermore, Joerger testified that his lost profit figures were based on projected monthly sales of $5,000 a school and a client base of one hundred schools. Yet, Parents' Pantry's sales were averaging only between $1,500 and $1,600 a month a school and Parents' Pantry's client base never exceeded fifteen or sixteen schools.

Furthermore, plaintiffs' argument that Joerger properly could base his proposed testimony on another

operation known as the "Market Day" program[1] because that business operation and this business operation were "substantially similar" is without merit. We agree with the trial court's finding that Market Day and Parents' Pantry were not identical business operations. Parents' Pantry was designed to operate differently than Market Day. Testimony demonstrated that Parents' Pantry relied on defendant to supply and deliver the grocery items whereas Market Day owned its own warehouse and handled all its own deliveries. Moreover, plaintiffs failed to present any information concerning the profitability of Market Day during its first five years of operation, or present any witnesses, from Market Day or elsewhere, with personal knowledge regarding Market Days' sales or profits. Joerger even conceded that he did not have any information regarding Market Day's accounts or monthly sales during its first five years of operation. He also admitted that he never reviewed any financial information regarding Market Day for its first five years of operation. We therefore find that there was no foundation for Joerger's proposed opinion that Parents' Pantry would experience profits similar to those of Market Day. The trial court did not abuse its discretion when it precluded Joerger's proposed expert testimony as to prospective profits.

IV

Plaintiffs' final argument is that the trial court abused its discretion when it awarded defendant mediation sanctions following this ten-day jury trial. Whether a party is entitled to sanctions and the

---

[1] "Market Day" is a "food-fundraising" program at the school Joerger's son attends in suburban Chicago, Illinois.

amount of actual costs are to be determined by the trial court within its discretion. *Dean, supra* at 551. Likewise, a trial court's award of attorney fees will be set aside only if it constitutes an abuse of discretion. *Beach v State Farm Mutual Automobile Ins Co*, 216 Mich App 612, 625-626; 550 NW2d 580 (1996).

We first note that we need not address plaintiffs' argument that the trial court awarded "clearly excessive" expert witness costs. Plaintiffs failed to support this assertion with sufficient evidence to address this issue. A party may not merely announce a position and leave it to the Court of Appeals to discover and rationalize the basis for the claim. *Goolsby v Detroit*, 419 Mich 651, 655, n 1; 358 NW2d 856 (1984); *In re Toler*, 193 Mich App 474, 477; 484 NW2d 672 (1992).

Concerning the rest of the sanctions, MCR 2.403(O)(1) states that if a party has rejected an evaluation and the action proceeds to trial, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the mediation evaluation. Actual costs are defined by MCR 2.403(O)(6) as

(a) those costs taxable in any civil action, and

(b) a reasonable attorney fee based on a reasonable hourly or daily rate as determined by the trial judge for services necessitated by the rejection of the mediation evaluation.

Plaintiffs argue that the mediation sanctions must be reduced because defendant's itemized billing listed $14,116.25 more than the figures contained in the billing total. Contrary to plaintiffs' argument, the record reveals that defendant explained the discrepancy by indicating that the $14,116.25 figure represented fees incurred in March and April 1995 for a posttrial

motion, which had not yet been billed to defendant when the computer billing sheets were created. MCR 2.403 does not limit an award to attorney fees for services performed only at the trial. Rather, the rule states that attorney fees may be awarded for all services necessitated by the rejection of the mediation award. *Troyanowski v Village of Kent City,* 175 Mich App 217, 226-227; 437 NW2d 266 (1988). Accordingly, taxable costs can include fees incurred posttrial. *Id.* at 226. Under the circumstances of this case, we believe the court's award was justified.

Plaintiffs also argue that the 716.75 hours billed by defense counsel are unreasonable. We disagree. Plaintiffs do not contest specific items billed, but only argue that too many hours were expended in the defense of the case. We have reviewed the itemized invoice and find that the hours billed were not necessarily unreasonable given the nature and complexity of this case. As the trial court indicated "[o]nce you sue a corporate defendant for millions of dollars, you have to expect that the law firm representing them is going to work hard defending the case because you never know how it could turn out."[2] The trial court carefully considered plaintiffs' objections to the hours spent and concluded that they were reasonable. The trial court did not abuse its discretion.

Plaintiffs also challenge the billings attributable to two individuals identified only by the initials "NAS" and "LAD." Plaintiffs argue that the individuals were not identified and no billing rate was provided for these individuals. Contrary to plaintiffs' assertions,

---

[2] The trial judge noted that he practiced law for sixteen years in a firm similar to the firm that represented defendant and was familiar with the innerworkings and billing of such firms.

the record reveals that these individuals were identi-
fied, by name, as two paralegals employed by defense
counsel. Defendant also informed plaintiffs and the
court that their hourly rate was $75. Accordingly,
these arguments are without merit.

We do find merit, however, in plaintiffs' argument
that the independent expenses attributable to the use
of paralegals is not recoverable as costs. For pur-
poses of mediation sanctions, "actual costs" include
"those costs taxable in any civil action." MCR
2.403(O)(6). Chapter 24 of the Revised Judicature Act,
MCL 600.2401 et seq.; MSA 27A.2401 et seq., governs
costs. Taylor v Anesthesia Associates of Muskegon,
PC, 179 Mich App 384, 387; 445 NW2d 525 (1989).
MCL 600.2405; MSA 27A.2405 provides that the fol-
lowing items may be taxed and awarded unless other-
wise directed:

(1) Any of the fees of officers, witnesses, or other per-
sons mentioned in this chapter or [MCL 600.2501 et seq.;
MSA 27A.2501 et seq.] unless a contrary intention is stated.

(2) Matters specially made taxable elsewhere in the stat-
utes or rules.

(3) The legal fees for any newspaper publication required
by law.

(4) The reasonable expense of printing any required brief
and appendix in the supreme court, including any brief on
motion for leave to appeal.

(5) The reasonable costs of any bond required by law,
including any stay of proceeding or appeal bond.

(6) Any attorney fees authorized by statute or by court
rule.

Our review of the provisions of the statute indicates
nothing supporting an award of costs for expenses
generated by paralegals. In the absence of statutory

authorization, costs may not be awarded to recompense for a claimed litigation expense. *Taylor, supra* at 387-388.

Expenses generated by paralegals are also not recoverable as a separate component of mediation sanctions. MCR 2.403(O)(6) and MCL 600.2405; MSA 27A.2405 use the phrases "attorney fee" and "attorney fees." Although those phrases are not defined, the Supreme Court has provided guidance by stating the relevant factors to be considered in determining the reasonableness of attorney fees: (1) the professional standing and experience of the attorney; (2) the skill, time, and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) *the expenses incurred*; and (6) the nature and length of the professional relationship with the client. *Wood v DAIIE*, 413 Mich 573, 588; 321 NW2d 653 (1982).

Clearly, attorney fees are not meant to compensate only work performed personally by members of the bar. Rather, the term must refer to a reasonable fee for the work product of an attorney that necessarily includes support staff. The rule allowing an award of attorney fees has traditionally anticipated the allowance of a fee sufficient to cover the office overhead of an attorney together with a reasonable profit. The inclusion of factor 5, *the expenses incurred*, reflects the traditional understanding that attorney fees should be sufficient to recoup at least a portion of overhead costs. *Johnston v Detroit Hoist & Crane Co*, 142 Mich App 597, 601; 370 NW2d 1 (1985); *Detroit Bank & Trust Co v Coopes*, 93 Mich App 459, 468; 287 NW2d 266 (1979). Fixed overhead costs include such items as employee wages, rent, equip-

ment rental, and so forth. *Id.* Thus, until a statute or a court rule specifies otherwise, the attorney fees must take into account the work not only of attorneys, but also of secretaries, messengers, *paralegals,* and others whose labor contributes to the work product for which an attorney bills a client, and it must also take account of other expenses and profit. We therefore must rule, albeit reluctantly, that the reasonable "attorney fees" should already include the work of paralegals, as well as that of attorneys and other factors underlying the fee. Accordingly, we remand in order for the trial court to reduce the award of attorney fees by the amount attributable to the independent paralegal billings.

We, however, find it noteworthy that a growing number of our sister states have allowed an independent recovery of paralegal or legal assistant time in attorney fee awards under statute, rules of court, or decisional law authorizing awards of attorney fees.[3] In most cases, with respect to paralegals and legal assistants, recovery is available "if a legal assistant performs work that has traditionally been done by any attorney." See, e.g., *Gill Savings Ass'n v Int'l Supply Co, Inc,* 759 SW2d 697, 702 (Tex App, 1988). To qualify for such recovery, the evidence must establish: (1) that the legal assistant is qualified through education, training, or work experience to perform

---

[3] See, e.g., *Attorneys' fees: cost of services provided by paralegals or the like as compensable element of award in state court,* 73 ALR4th 938, § 3, pp 949-950, and cases cited therein; *Gill Savings Ass'n v Int'l Supply Co, Inc,* 759 SW2d 697, 702 (Tex App, 1988), and cases cited therein; *Jacobs v Mancuso,* 825 F2d 559, 563 (CA 1, 1987), both the body of the text and footnote 6 and cases cited therein; *Spanish Action Committee of Chicago v Chicago,* 811 F2d 1129, 1138 (CA 7, 1987); *Ramos v Lamm,* 713 F2d 546, 558-559 (CA 10, 1983).

substantive legal work; (2) that substantive legal work was performed under the direction and supervision of an attorney; (3) the nature of the legal work that was performed; (4) the hourly rate being charged for the legal assistant; and (5) the number of hours expended by the legal assistant. *Id.*

We find that the increasing practice of allowing an independent recovery of paralegal or legal assistant time in attorney fee awards has merit. We recognize that the day-to-day duties of a legal assistant will vary from law firm to law firm. If, however, the paralegal performs work that has traditionally been done by an attorney, we believe that it follows that a separate expense should be allowable. Neither statute nor court rule, however, currently allows such expenses as separate billable items. It is not our task to rewrite statutes. We therefore encourage the Legislature to change the statute or the Supreme Court to change the court rule to provide for appropriate billing for paralegal fees.

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.

GRIBBS, J., concurred.

TAYLOR, P.J. *(concurring in part and dissenting in part).* I concur with the majority opinion except for that portion of part IV that holds that independent expenses attributable to the use of paralegals are not recoverable as mediation sanctions. Thus I would affirm the trial court's award of mediation sanctions that included costs attributable to paralegals.

The majority remands this case to the trial court with instructions that it reduce the award of attorney fees by the amount attributable to the independent

paralegal billings because "attorney fees" must take into account the work not only of attorneys, but also of secretaries, messengers, paralegals, and others whose labor contributes to the work product for which an attorney bills a client. The majority "reluctantly" rules that the reasonable attorney fee allowed as mediation sanctions should already include the work of paralegals. The majority indicates that its ruling is reluctant because it finds the increasing practice of allowing an independent recovery of paralegal time in attorney fee awards has merit. The majority nevertheless concludes that an amendment of the court rule or a statute would be necessary before such an award could be allowed.

The flaw in the majority opinion is that its holding is dependent on how a law firm prepares its bills for the court. As I understand the holding, if the firm billed its client separately for paralegals or any other cost, such as secretaries or messengers, but, pursuant to prior agreed-to arrangements with the client, when submitting the billings to the trial court for mediation sanctions, folded those into "attorney fees," they would not run afoul of the majority's holding. Presumably, all sophisticated firms who anticipate possible mediation sanctions will now adopt that procedure. We have, then, another puzzling fiction in a field where there are far too many now. (For example, if we really want to be textualists with the court rule, why are any costs other than the stark fees for the attorney allowed?) I would affirm the circuit court order and allow the paralegal costs as analogous to other support costs, such as secretaries, messengers, and so forth that have not customarily been broken out, but are no different except for that, than parale-

gal costs. I simply see nothing in the court rules or statutes that would prevent us from holding that paralegal expenses may be recovered as part of a reasonable attorney fee for purposes of mediation sanctions. Nevertheless, because I hold a minority position in this regard, I join the majority in its urging of an amendment of the court rules or statutes to allow the recovery of paralegal expenses as a part of mediation sanctions.