*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CALLAHAN MCFARLAND, by Next Friend VAL MCFARLAND,

UNPUBLISHED
September 29, 2022

Plaintiff-Appellee,

v

No. 357218
Oakland Circuit Court
LC No. 2017-162208-NO

DEAN TRANSPORTATION, INC.,

Defendant-Appellant.

Before: GLEICHER, C.J., and MARKEY and PATEL, JJ.

PER CURIAM.

Callahan McFarland is nonverbal with autism spectrum disorder (ASD). When Callahan was thirteen years old, he was assaulted by another special education student while riding a school bus operated by defendant Dean Transportation, Inc. Plaintiff Val McFarland, Callahan's mother and next friend, filed this action alleging that Dean Transportation was negligent and grossly negligent for allowing the assault to occur. The jury found Dean Transportation negligent and awarded $10,000 in noneconomic damages, but the jury did not award any economic damages. The trial court set aside the jury's verdict and granted a new trial because it determined that the economic damages were inadequate and appeared to have been influenced by defense counsel's improper statements that plaintiff had insurance coverage. Dean Transportation now appeals by delayed leave granted.[1]

Proximate causation was strongly contested at trial. It was the jury's prerogative to assess the testimony and evidence to determine whether each category of damages was warranted. The jury was not required to award economic damages simply because liability was found, *Joerger v Gordon Food Service, Inc*, 224 Mich App 167, 173; 568 NW2d 365 (1997), or because it awarded noneconomic damages, *Kelly v Builders Square, Inc*, 465 Mich 29, 39; 632 NW2d 912 (2001). And while defense counsel's comments were improper, the jury's verdict was supported by the

---

[1] *McFarland v Dean Transp, Inc*, unpublished order of the Court of Appeals, entered August 10, 2021 (Docket No. 357218).

-1-

record. Accordingly, we reverse the trial court's order granting a new trial and remand for entry of a judgment consistent with the jury's verdict.

## I. BACKGROUND

Callahan was diagnosed with ASD when he was two years old. He participated in applied behavior analysis (ABA) and other therapies. He eventually was able to attend public school when he was 10 years old. When he started middle school in 2014, he was struggling with behaviors such as eyelash pulling, or throwing things in water, toilets, and garbage disposals. But Callahan's parents maintained that he had not had any issues with self-injurious or destructive behaviors for several years prior to the assault. His parents also contended that he had been toilet trained since he first started attending public school in the fourth grade, but admitted that he would have occasional accidents. Callahan did not have any adjustment issues at the beginning of the 2017/2018 school year.

After the September 2017 assault, Callahan was diagnosed with a concussion and post-concussive syndrome. His parents maintained that his behavior regressed after the assault. He exhibited obsessive-compulsive behaviors, separation anxiety, sleep disturbances, and toileting issues. Callahan was treated with various prescription medications, additional ABA therapy, speech therapy, and other programs to address his regressive behavior. Mrs. McFarland testified that Callahan regressed to where he was when he was five years old. And he began wearing diapers again. At the time of trial, he was still wearing diapers. Callahan's parents withdrew him from school after the incident because they were concerned for his safety, and Mrs. McFarland did not think that he was capable of attending public school.

Dean Transportation did not dispute that Callahan required services and treatments, but it argued that the prescribed services and treatments were not causally related to the assault. It maintained that, regardless of the assault, Callahan would have needed the various services and prescribed treatments because of his ASD condition.

Following a seven-day trial, the jury found that Dean Transportation was negligent, that Callahan sustained an injury or damage, and that Dean Transportation's negligence was a proximate cause of his injuries or damages. The jury awarded Callahan $10,000 in noneconomic damages, but it did not award any economic damages. Plaintiff moved for a new trial or additur arguing that the jury's failure to award economic damages was inadequate and unfairly influenced by defense counsel's implication of medical insurance as a collateral source. The trial court agreed that the verdict was inadequate, and further found that defense counsel engaged in misconduct that appeared to have contributed to the inadequate verdict. Accordingly, the trial court granted plaintiff's motion for a new trial, limited to the issue of economic damages. In a separate order, the trial court denied Dean Transportation's motion for a directed verdict on the issue of plaintiff's economic damages. Dean Transportation now appeals by delayed leave granted.

## II. STANDARD OF REVIEW

We review a trial court's decision to grant or deny a motion for a new trial for an abuse of discretion. *Gilbert v DaimlerChrysler* Corp, 470 Mich 749, 761; 685 NW2d 391 (2004). A trial court abuses its discretion when its decision falls "outside the range of reasonable and principled

outcomes." *Saffian v Simmons,* 477 Mich 8, 12; 727 NW2d 132 (2007). We review a trial court's factual findings for clear error. *Home-Owners Ins Co v Perkins*, 328 Mich App 570, 579; 939 NW2d 705 (2019). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Id.* (quotation marks and citations omitted).

## III. ANALYSIS

Dean Transportation argues that the trial court abused its discretion by granting plaintiff's motion for a new trial on the issue of economic damages. We agree.

The trial court granted plaintiff a new trial under MCR 2.611(A)(1)(c), which states:

(1) A new trial may be granted to all or some of the parties, on all or some of the issues, whenever their substantial rights are materially affected, for any of the following reasons:

\* \* \*

(c) Excessive or inadequate damages appearing to have been influenced by passion or prejudice.

In order to grant relief under MCR 2.611(A)(1)(c), it is necessary to first determine whether the economic damages were "inadequate." It is the jury's duty to assess damages in accordance with the evidence. *Zinchook v Turkewycz*, 128 Mich App 513, 518; 340 NW2d 844 (1983). It is the plaintiff's burden to prove damages, and a jury is free to accept or reject such proofs. *Joerger*, 224 Mich App at 172-173. A jury is not required to award damages simply because liability was found. *Id*. at 173. "Medical expenses and pain and suffering are distinct categories of damages," each of which "may have a distinct evidentiary basis," and a plaintiff bears the burden of proving "each element of [his or] her case, including every item of claimed damages." *Kelly*, 465 Mich at 39. It is the trier of fact's prerogative to assess the testimony and evidence to determine whether an award of a category of damages is warranted:

In short, the jury is free to credit or discredit any testimony. It may evaluate the evidence on pain and suffering differently from the proof of other damages. No legal principle requires the jury to award one item of damages merely because it has awarded another item. [*Id.*]

In this case, the trial court concluded that the jury's refusal to award economic damages was inadequate because:

the jury was presented with evidence from which it could be determined that the cost of treating Callahan's injuries occasioned by the assault was $89,000 per year. Because the jury decided not to award any damages, the Court finds that the award is insufficient for the purpose of providing Callahan with the private services that were required to treat his regression in behavioral functioning occasioned by the assault.

Plaintiff presented testimony and evidence that Callahan's behavior regressed after the assault. As a result, Callahan participated in extensive therapies, was prescribed various medications, and wore diapers. Dean Transportation did not specifically challenge the costs of the therapies, medications, or diapers. But it did contest plaintiff's claim that Callahan's behavioral issues were caused by the assault.

After the assault, Callahan began treating with Dr. Meghan Harper-Shankie, a pediatric neurologist. Dr. Harper-Shankie opined that the assault could have caused a concussion and diagnosed Callahan with post-concussive syndrome. She was also concerned that he may have post-traumatic stress disorder (PTSD) given his agitation and aggressive behaviors. She prescribed medications to help manage his anxiety, aggressive behavior, obsessive-compulsive behavior, and seizures. She indicated that autistic children are prone to seizures. In fact, she testified that there is a 30% likelihood that someone with an autism diagnosis will have a seizure.

On cross-examination, Dr. Harper-Shankie acknowledged that the medical records revealed that Callahan was experiencing much of the same obsessive-compulsive behaviors in 2015 that he experienced after the assault, including repeatedly touching the wall, flipping switches, dumping water, and pulling his eyelashes out. She also acknowledged that any stressful event, including Callahan's removal from school, could cause behavioral changes. She conceded that Callahan's post-concussive symptoms progressively improved, but maintained that some of the physical symptoms took longer than expected to resolve.

Dr. Gerald Shiener, plaintiff's psychiatric expert, opined that Callahan suffered PTSD, a concussion, and a seizure disorder as a result of the assault. Dr. Shiener opined that the assault caused Callahan's regression and subsequent behavioral issues. He testified that there was no evidence that Callahan suffered obsessive-compulsive disorder (OCD) before the assault. Given that Callahan was still experiencing symptoms such as anxiety, obsessive-compulsive behavior, insomnia consistent with post-concussion syndrome, headaches, and regression in activities of daily living, such as toileting, Dr. Shiener opined that these symptoms were likely to be permanent or persistent.

Mr. McFarland testified that Callahan's therapies, medications, and diapers are costly. After the assault, Callahan was removed from public school and enrolled in Autism Home Support Services (AHSS), which is a private facility. At the time of trial, Callahan was attending ABA therapy at AHSS, which costs $1300 per week. The family also met with the AHSS director approximately once a month at a cost of $50 per session. Although Callahan had attended speech therapy, which costs $250 per week, his speech therapy was discontinued because the family could no longer afford it. Callahan was also taking several prescription medications and Mr. McFarland testified regarding the associated costs, which were corroborated by pharmacy billing records. In addition, the family purchased 2½ cases of diapers for Callahan each week at a cost of $20.50 for each case.

Dean Transportation challenged the relationship of these expenses to the assault through the cross-examination of plaintiff's witnesses, testimony from Callahan's former teacher, and testimony from the defense expert. For example, Ian Cohoon, the lead board-certified behavior analyst and center manager at AHSS, acknowledged on cross-examination that a child with ASD can experience regression if the child is removed from a structured school setting and his routine

is changed. Cohoon explained that children on the autism spectrum often have challenges with change. And changing their routine can cause regression. Cohoon also testified that, in the two years that Callahan had been attending ABA therapy at AHSS, Callahan's skills and behaviors had progressed. For example, although Callahan was still wearing diapers at home, he had advanced to a point where he did not wear diapers at AHSS.

Deb Herczak, Callahan's former sixth and seventh grade special education teacher, testified that, prior to the assault, Callahan had issues with eating, did not appear to want to use the bathrooms at school, had toileting accidents, and would pick his eyelashes. Callahan's individual education plan (IEP) for the 2014/2015 school year stated that he threw things in water, toilets, and garbage disposals. He also ran around the room kicking things and people. During the 2016/2017 school year, his IEP reflected that he continued to have issues using the bathroom, even when prompted, and that he had eating issues.

Dr. David Rosenberg, defendant's child and adolescent psychiatry expert, disagreed with Dr. Shiener's opinion that there was no evidence that Callahan suffered from OCD before the assault. He noted that the medical records demonstrated that before the assault, Callahan was having issues with showering multiple times a day, toileting, and eating. And the medical records revealed that he had been prescribed OCD medications in 2010 and 2015. Dr. Rosenberg also opined that Callahan did not meet the clinical criteria for PTSD. Instead, Dr. Rosenberg related Callahan's anxiety and obsessive-compulsive behaviors to his pre-existing OCD and ASD diagnoses. He also disagreed with Dr. Shiener's opinion that Callahan's seizure activity was caused by the assault. Just as Dr. Harper-Shankie had testified, Dr. Rosenberg explained that 30% of children with ASD are predisposed to having epilepsy or seizure activity without trauma. Dr. Rosenberg stated that many of his patients with ASD require medications to manage seizures and behaviors associated with ASD such as anxiety, irritability, insomnia, and obsessive-compulsiveness. According to Dr. Rosenberg, even ASD patients who have not experienced trauma deal with some of the same issues that Callahan has, such as not sleeping in their own bed, toileting problems, anxiety, and not being able to attend public school.

Dr. Rosenberg testified that, with ASD, "[i]t's the rule that there is a waxing and waning of symptoms, an up and down as the threshold goes up and down, and you can predict symptoms like these, even if the incident on the bus had never happened." Dr. Rosenberg noted that, before the assault, Callahan would engage in self-injurious behavior, aggressive behavior with others, and required 24-hour care. Dr. Rosenberg disagreed with Mrs. McFarland's claim that Callahan had a dramatic deterioration in his behavior after the assault. He opined that there were a multitude of factors that could have contributed to Callahan's behavioral issues after the assault, such as his removal from the structured school environment, the onset of puberty, the parents' perseveration on the assault, and "just the waxing and waning in autism and associating obsessive-compulsive behaviors."

After hearing the totality of the testimony, the jury concluded that Dean Transportation was negligent and that Callahan suffered injuries or damages as a result. It awarded noneconomic damages in the amount of $10,000 for Callahan's "physical pain and suffering, mental anguish, fright and shock, denial of social pleasure and enjoyments, embarrassment, humiliation or mortification, the disability of a traumatic brain injury and post-traumatic stress disorder, and the increase in any of these elements of damages arising from aggravation of a preexisting ailment or

condition[.]" Although plaintiff had requested an award of both past and future economic damages, the jury did not award any economic damages.

Contrary to the trial court's conclusion, the jury's award of zero economic damages was not inadequate or inconsistent with its verdict. "[T]he authority to measure damages . . . inheres in the jury's role as trier of fact." *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 763; 685 NW2d 391 (2004) (quotation marks and citations omitted). The jury was not required to award economic damages simply because liability was found, *Joerger*, 224 Mich App at 173, or because it awarded noneconomic damages, *Kelly,* 465 Mich at 39. Even if plaintiff's economic damage figures[2] were not controverted, proximate causation was certainly challenged. And it was the jury's duty to assess damages in accordance with the evidence. *Zinchook*, 128 Mich App at 518.

The trial court recognized that Dean Transportation "disputed that Callahan's behavioral regression resulted from the incident on the bus, and presented expert testimony in support of its position." But in its order granting the motion for new trial, the trial court only addressed the favorable evidence and testimony in support of plaintiff's economic damages claim. The court failed to mention Dr. Rosenberg's contradictory testimony or discuss the testimony of other witnesses that was elicited on cross-examination. "The weight given to the testimony of experts is for the jury to decide, and it is the province of the jury to decide which expert to believe." *Guerrero v Smith*, 280 Mich App 647, 669; 761 NW2d 723 (2008) (quotation marks and citation omitted). Even if a witness's statements are not contradicted, a jury is afforded the discretion to disbelieve that testimony. *Id.* The doctors disagreed whether Callahan's behavioral issues were related to the assault, or whether they were mere continuations of pre-existing issues that were unaffected by the assault. It was for the jury to decide which witnesses to believe in determining whether plaintiff was entitled to an award for economic damages. The trial court clearly erred in finding that the economic damages award was inadequate as a matter of law.

Because the jury's verdict was supported by the record and the economic damages award was not inadequate as a matter of law, it is unnecessary for us to reach the second prong of the analysis under MCR 2.611(A)(1)(c): whether "*inadequate damages* [appear] to have been influenced by passion or prejudice." (Emphasis added).

IV. CONCLUSION

Because the jury's verdict was supported by the evidence, the trial court clearly erred in finding that the economic damages award was inadequate as a matter of law. Accordingly, we conclude that the trial court abused its discretion by granting plaintiff a new trial on the issue of economic damages. We reverse the trial court's order granting a new trial and remand for entry of a judgment consistent with the jury's verdict.

---

[2] The jury verdict form asked the jury to award past and future economic damages for each of the following categories (1) medical care, treatment, and services, (2) speech therapy, (3) ABA therapy, (4) diapers, (5) prescriptions, and (6) transportation.

Given our disposition of this issue, defendant's additional argument—that the trial court erred by denying its motion for a directed verdict on the issue of plaintiff's economic damages—is moot. Accordingly, we decline to consider it.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Jane E. Markey
/s/ Sima G. Patel